52  119|
51a 552

# COOPER & MOSS

## *v.*

# WILLIAM R. HAMILTON.

1. CONTRACTS—*who shall prepare them.* A party residing in this State, having obtained a divorce from his wife in Indiana, proposed a settlement with her in order to prevent her attacking the divorce. An agreement was entered into, in writing, the effect of which was to create a lien on the real estate of the former husband, to secure the payment of money to the wife: *Held,* that in the absence of any understanding on the subject, the contract should be prepared at the expense of the party whose lands were to become encumbered by it.

2. ATTORNEY AND CLIENT—*when the relation exists.* In this case, the attorney who prepared the written contract, did so at the request of the former husband, and though at the same time he was acting, in respect to

the subject matter of the agreement, as the attorney of the divorced wife, yet his relations to her did not prohibit him from preparing the contract at the instance of the other party, for which the latter could be compelled to pay him.

3. SAME—*of the mode of retaining counsel.* It is not essential to the right of recovery by an attorney against his client for professional services, that there should be shown an express request, but if the services were rendered under such circumstances, as will reasonably imply, that they were performed with the assent and upon the request of such party, a recovery therefor may be had.

APPEAL from the Circuit Court of Peoria county ; the Hon. S. D. PUTERBAUGH, Judge, presiding.

The opinion states the case.

Mr. H. GROVE, for the appellants.

Messrs. ROBINSON & CALDWELL, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action commenced by appellants before a justice of the peace of Peoria county, against appellee, to recover for professional services, to the amount of fifty dollars. On a trial before the justice, the jury found for the defendant, and a judgment was rendered in his favor. The case was removed to the circuit court by appeal, where a trial was had before the court and a jury, with a similar result. A motion for a new trial was entered and overruled, and the record brought to this court on appeal, and various errors are assigned.

It appears that appellee had resided in the city of Peoria for a long period of time, but had been absent for two or three years. On his return he called on McCoy, an attorney in the city, and requested him see Mrs. Hamilton, from whom appellee claimed to have obtained a divorce in a court in

Indiana, and to see whether she could be induced to settle with appellee, and not attack the divorce. After seeing her, McCoy informed appellee what she said, and he then requested McCoy to see Cooper, who was Mrs. Hamilton's legal adviser, and get him to co-operate with McCoy in effecting an arrangement with her. McCoy called on Cooper, and they together made many visits to Mrs. Hamilton in reference to the settlement. She made larger claims than was finally agreed upon. McCoy says that Cooper considered himself Mrs. Hamilton's attorney, and manifested no want of a disposition to protect her interest. As a result of these interviews, a settlement was agreed upon, papers drawn and executed, and delivered.

After the terms of the agreement had been settled, appellee was very anxious that the papers should be so drawn as to be free from all doubt as to their validity. Appellee and Cooper talked the matter over, and it was arranged that Cooper should write to Washington and learn the requisite amount of stamps necessary to attach to the instrument, which he did. Cooper testifies that after the terms were agreed upon, appellee expressed a desire that the papers should be so drawn as to be binding, to which he assented, and suggested that the agreement should embrace every point, to which appellant assented, and suggested that, as Cooper was familiar with the matter, he could draw up the agreement better than any one else, which Cooper did, but having submitted the first draft to his attorney, appellee returned the paper with objections, and Cooper re-wrote the agreement and obviated the objections, and it was executed.

Appellants claim that appellee is bound to pay for the service rendered in drawing the agreement. On the other side, it is urged that Robinson was appellee's attorney, and Cooper was Mrs. Hamilton's, and that he, therefore, necessarily acted for her, and not for appellee, in what he did in the matter.

In *Buckmaster* v. *Grundy*, 1 Scam. 310, it was held that the purchaser was not bound to prepare and tender a deed to the vendor for him to execute, unless such an obligation is imposed by the contract of sale. It then follows that the vendor of lands or a mortgagor is bound to prepare the deed or mortgage at his own expense, unless it is otherwise stipulated by the parties. When he agrees to make and deliver it, the duty and expense devolves upon him, and not the grantee. It was then, so far as the evidence discloses in this case, the duty of appellee to have this agreement, which, as we understand it, operated as a lien on his real estate, drawn and executed, as we find no evidence that Mrs. Hamilton did agree to incur the expense. If, then, it was his duty to have it done, and to pay for it, and he intimated that Cooper should be the draftsman, we can see no reason why appellee should not pay him for it.

It does not follow that because Cooper was Mrs. Hamilton's attorney, he should therefore draw the deed, or that she should pay for it. Unless otherwise agreed, that became the duty of appellee. Nor was it incompatible with Cooper's engagements with his client to draw the instrument, but still, in every particular, he was bound to protect her rights. He was, of course, bound in all things to make it conform to the agreement. But the terms having been first arranged, he could draw the instrument in conformity thereto, and look to appellee to pay him therefor, on either an express or an implied request. Whilst the position of Cooper was a delicate one, still it was not prohibited by his relation to Mrs. Hamilton. But, under such circumstances, an attorney must act with the utmost good faith towards his client. A portion of the instructions asked by appellants and refused by the court were in accordance with the views here expressed, and should have been given. The instruction given by the court in lieu of them, was not sufficiently comprehensive, as it seems to limit appellee's liability to an express request, and seems to exclude an implied promise to pay for preparing the mortgage.

Appellee's instructions go upon the theory that there must be an express and formal retainer before an attorney can recover. The contract of retainer may be made like any other. It may be express or implied. And whilst no one would expect an attorney would so far forget the duty he owes to his profession as to volunteer without the knowledge or consent of a party, to render for him professional services, and then charge for them, still, when he renders services under such circumstances as reasonably imply that they were performed with the assent and on the request of a party, he must be held liable. The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*