# Grimball *v.* Cruse.

*Bill in Equity by Trustee, asking Instructions; Decretal Orders for Allowance of Counsel Fees and Compensation.*

1. *Allowance of counsel fees to trustee.*—A trustee by appointment for a married woman, to whose property, on her death intestate, conflicting claims are asserted by her surviving husband, her administrator, and her brothers and sisters, may properly file a bill in equity, asking a judicial construction of the will creating the trust, and the directions of the court as to the proper persons to whom he shall deliver the property; but, in such suit, he is merely a stakeholder, of whom strict neutrality and indifference are required, not advocating or espousing the cause of any one of the claimants; and while he is entitled to an allowance for reasonable counsel fees, for services rendered in instituting and prosecuting such suit, this being a proper charge on the trust fund, his counsel can not represent the interest of any of the rival claimants, and charge the trustee or the trust estate on account of such additional services.

2. *Compensation of trustee; when allowed for extra services.*—The general management, preservation, and investment of the trust funds, and the making of reports and settlements, are among the ordinary duties of a trustee, for which he can not claim extra compensation; and there is no greater reason for increasing his compensation, because a particular investment has developed unusual profits, than there would be for diminishing it if the investment had proved unprofitable; but, if it becomes necessary for the trustee to file a bill in equity to settle the rights of different claimants of the trust property, and extra labor is thereby cast on him, he should have a reasonable allowance for such extra labor.

3. *Apportionment of allowance for costs and compensation.*—When the trust estate involved in the litigation consists of both real and personal property, the former descending to the heirs at law, and the latter devolving on the personal representative, whatever allowance is made to the trustee, for counsel fees and compensation, should be apportioned between the two funds, or kinds of property.

4. *Attorney's fees for services rendered in litigation about trust estate; when chargeable against trust fund.*—The principle which governs in the case of a creditors' bill, or other bill of similar character, and which re-

[Grimball v. Cruse.]

quires that all persons who come in and partake of the fruits of the litigation shall contribute to the costs and expenses, including reasonable counsel fees, has no application to a bill filed by a trustee, asking a judicial construction of the will creating the trust, and instructions as to the rights of the rival claimants; and there is no principle of law or equity, which authorizes the court, under such a bill, to charge either the trust funds, or the interest therein of any of the successful parties, with reasonable counsel fees for services rendered under a retainer by other parties having similar or identical interests.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. N. S. GRAHAM.

This is a branch of the case of *Grimball v. Patton*, reported in this volume. The original bill in the cause was filed on the 8th December, 1877, by Samuel R. Cruse, as trustee of the estate of Mrs. Kate Grimball, deceased, held by her under the provisions of the will of her deceased father, Dr. David Moore, against her surviving husband, John Grimball, who had taken out letters of administration on her estate in the proper court in New York city, where she died; and against John L. Rison, as administrator of her estate by appointment of the Probate Court of Madison, Samuel H. Moore and others, her surviving brothers and sisters, who claimed the property under the provisions of the will, Mrs. Grimball having died intestate, and without children. The object of the bill was to obtain a judicial construction of the testator's will, and instructions to the trustee as to the rights of the respective claimants of the property. The report of the case shows the principal matters in controversy between the parties, and the decision of this court as to their respective rights. The present appeal brings up for revision the rulings of chancellor under a decretal order made in January, 1881, after the opinion of this court on the former appeal was delivered, and relates to the allowance of compensation and counsel fees to the trustee, and of compensation to Humes & Gordon and Walker & Shelby, solicitors in the cause. On the coming in of the special register's report under this order, to which exceptions were reserved by several of the parties, the chancellor rendered a decree allowing Humes & Gordon, as solicitors of the trustee, the sum of $3,500; to Humes & Gordon and Walker & Shelby, $4,000, or $2,000 to each firm, " as reasonable compensation for their services as solicitors of all the parties defendants (except John Grimball);" and $6,000 to the trustee, as extra compensation for his services, in addition to his annual salary of $1,000. From this decree an appeal is now taken by Grimball and Samuel H. Moore. There is no assignment of errors on the transcript, as it has come to the hands of the reporter.

D. P. LEWIS, and R. B. TUNTSTALL, for appellants.—1. The

[Grimball v. Cruse.]

chancellor erred in the allowance of $6,000 to the trustee, as extra compensation, or compensation for extra services. It is shown that the trustee accepted the position at an agreed annual salary of $1,000; that he has always charged himself with this amount as salary, in his accounts passed and approved by the court; and if he ever expressed any dissatisfaction with the amount, or complaimed of any extra labor devolved upon him, the record does not show it. An agreement for a stipulated compensation precludes a greater allowance.—2 White & Tudor's Lead. Cases in Equity, 4th Amer. ed., 599–600; 3 Porter, 124; 1 Johns. Ch. 529. The agreement was not terminated by the death of Mrs. Grimball; and if it were, it has been ratified and confirmed since her death, and the parties in interest having continued to act under it, it has become conclusive on them.—*DePeyster v. Ferrers*, 11 Paige, 13; *Ross v. Hardin*, 79 N. Y. 92; *Huntingdon v. Claflin*, 38 N. Y. 182. If the trustee was dissatisfied with his agreed compensation, he could at any time have resigned; and if he had expressed his dissatisfaction, the beneficiaries of the trust would have had an opportunity to agree to an increase, or to employ some other person. Besides, under the evidence adduced, $1,000 *per annum* was ample compensation. Nor were any extra services performed by the trustee.—*Allen v. Martin*, 36 Ala. 580; *Holman v. Sims*, 39 Ala. 712. Most of the investments were made by consent of the parties, and under the orders of the court; and if any of them have proved very profitable, as is claimed of the railroad bonds, it must be remembered that this is a very fluctuating investment, and the apparent profit of to-day may prove a loss to-morrow. If the trustee were held accountable for legal interest on the funds in his hands, and annual investments thereof, the fund would have accumulated at least as much as it appears to have done from the investments in bonds, &c. And the general principle applies in all such cases, "that care should be taken in fixing the amount [of compensation], that trusts of this character should not become money-making occupations."—*Gould v. Hayes*, 25 Ala. 432.

2. The chancellor erred, also, in the allowance of $3,500 to Humes & Gordon, as the solicitors of the complainant. It is shown that they filed the bill, at a stipulated fee of $500, as fixed by agreement between them and the trustee; and Cruse testifies as to this, "My understanding of the contract with them was, that they were bound to attend to the case through for the $500." It is shown, also, that in addition to the $500, they have received from the trustee over $2,400 in this case. An attorney or solicitor can not recover greater compensation than he agreed to receive, though his services were worth more; nor can he lawfully contract with his client, while the relation

[Grimball v. Cruse.]

between them continues, for an increase of compensation. *Coopwood v. Wallace*, 12 Ala. 790; *Lecatt v. Sallee*, 3 Porter, 110, and cases cited; *Walmsey v. Booth*, 2 Atk. 29; *Newman v. Payne*, 2 Vesey, 200; *Oldham v. Hand*, 2 Vesey, senior, 259; *Montesque v. Lands*, 18 Vesey, 312. The law refusing to raise an implied promise to pay greater compensation than agreed, and prohibiting an express contract to that effect, on what principle can a court of equity adopt a different rule? A trustee is simply indemnified and reimbursed for reasonable counsel fees which he has paid or incurred, as a part of his costs and expenses.—*Downing v. Marshall*, 37 N. Y. 388, and cases cited. Here, the trustee's expenditures for counsel fees have already been passed and approved by the court, and he has been fully indemnified. His duties, and the duties of his solicitors, under the bill filed by him, were very simple, and the $500 was full compensation. If his solicitors went beyond their duty under his retainer, and rendered professional services for any of the rival claimants brought before the court, that is not a proper charge against either the trustee or the trust property.

3. The chancellor erred, also, in the allowance of $4,000 to Humes & Gordon and Walker & Shelby, "for services rendered as solicitors for all the parties defendant except Grimball." These solicitors represented different defendants, by express contract with each, and must look to their respective clients for payment. Neither of them represented Samuel H. Moore, who filed his own answer, as he had a constitutional right to do; nor did either of them represent Grimball, who had his own solicitors, or Rison, the resident administrator. To charge this allowance against the trust property, would make Samuel H. Moore pay for services rendered by attorneys whom he never employed, and thus deny him the constitutional right of acting as his own counsel; and would impose a similar charge on Grimball, if he should be held entitled to the personal property or a part thereof, for services rendered in resisting his claims. A court of equity can not thus interfere with the absolute right of adult parties to make their own contracts, and enforce liabilities against them *in invitum* under the form of a reference.

WATTS & SONS, *contra.*—1. It was the right and duty of the trustee to file the bill in this case, and his reasonable attorney's fees for services rendered during the litigation are a proper charge on the trust estate.—*Rogers v. Ross*, 4 John. Ch. 608; *Fabele v. Fabele*, 1 John. Ch. 45; *Morrell v. Dickey*, 1 John. Ch. 156; *In re Eddy's Will*, 33 N. J. Eq. 578; Perry on Trusts, §§ 891, 894, 903, 918. When the true construction of a will is doubtful, so that two or more persons may fairly make adverse claims to the same fund, either may resort to a court of equity

[Grimball v. Cruse.]

for an interpretation; and though his claim may be pronounced invalid, he may be allowed his costs and reasonable counsel fees out of the fund.—*Noe's Adm'r v. Miller*, 31 N. J. Eq. 238.

2. Whenever a trust fund is in the hands of a court of equity, or under its control, any person having an equitable claim to any part of it, or an equitable charge or lien upon it, may petition the court to have his claim or lien satisfied before the fund is withdrawn; and the court has power to adjust the rights of all such persons, and make orders and decrees in reference to the fund, which will bind all the parties before the court.—*Colt v. Barnes*, 64 Ala. 108; *Ex parte Plitt*, 2 Wallace, jr., 455–79, where all the points presented in this case were discussed and decided. For services rendered in the matter of a trust fund in the custody of the court, attorneys and solicitors are regarded as equitable assignees of a part interest, and their rights are protected by the court.—Authorities above cited; also, *Warfield v. Campbell*, 38 Ala. 527, 534; *Ex parte Lehman, Durr & Co.*, 59 Ala. 631; *Hunt v. McClanahan*, 1 Heiskell, 503; *Brown v. Bigley*, 3 Tenn. Ch. 618; *Cox v. McPherson*, 6 Otto, 404.

3. Under these authorities, applied to this case, the only question is as to the reasonableness of the allowances made; and this is to be decided by an examination of the evidence shown by the record, on which the chancellor founded his conclusions. The $500 paid by the trustee to Humes & Gordon was intended as a retainer for the filing of the bill, and was expressed in the receipt to be "on account of our [their] fees as his attorneys in said trust matter." The value of the services rendered for the trust estate, outside of this retainer, is abundantly proved; and all the parties who reaped the benefit of those services, though not parties to the retainer, should contribute to the expense. When Cruse assumed the duties of the trust, it was expected to continue but a few months. The extraordinary services growing out of Mrs. Grimball's death, the complications of the trust, and this protracted litigation, were not anticipated, and were not provided for; and he continued to act as trustee, on the assurance of his solicitors, "that it was customary for the courts to allow a reasonable compensation." The trust itself ceased on the death of Mrs. Grimball, and the trustee's engagement necessarily terminated with it; and there being no express contract between the parties, it is for the court to determine what is a reasonable compensation. The services were all performed under the eye of court, and the nature of those services, as well as the unusual profits which the trust estate has derived from them, are matters of record in the cause.

STONE, J.—Grimball and Moore severally filed exceptions,

[Grimball v. Cruse.]

in some of which Rison, the administrator, joined.   They also moved to vacate and set aside certain parts of the decretal order of reference.'   The assignments of error here question the correctness of ·certain parts of the decretal order, the findings of the special register, and .the final decree of the chancellor..on the register's report.   They are all reducible to three subjects of inquiry, and what we have to say will be confined to those three subjects.

In the condition in which Mrs. Grimball's estate was left at her death, and the conflicting claims asserted to her property by her administrator, Rison, her husband, Grimball, and her next of kin, it was not only the privilege, but the duty of the trustee, to obtain a judicial construction of ·Dr. Moore's will, and directions as to the proper administration and disposition of the trust property in his hands.   His relation to the property was that of an indifferent stakeholder, solicitous, not that one party or the other should succeed to the ownership, but that in the settlement of the trust the property and funds should pass into the right hands.   It therefore became his duty to file a bill, informing the court.of the facts out of which the doubt and contest arose, the rival claimants, and asking the court to interpret the will, under whose provisions the property was held, and to direct him to whom he must surrender the subject-matter of the trust.   In this it was his duty to act in good faith, so presenting the facts of the case, as that each rival claimant should have the opportunity of having his claim properly considered. It was neither his duty, nor his right, to espouse the cause of one claimant, to the prejudice of another.   Stern neutrality was his duty, and equal indifference to the success of either claimant.   As we have said, his only permissible interest and solicitude were, that the questions should be properly presented before the proper court, so that justice should be· administered according to law, and to the rights of the several parties.   To the extent of properly presenting the questions of doubt and controvesy before the court, and of having them properly represented there, or before any tribunal to which the ‘controversy presented by his bill might.be carried, he. is entitled to credit for proper counsel·fees, incurred and expended by him.   This.is legitimate expense of the administration of the trust, and a proper charge on the trust fund.—*Pinckard v. Pinckard,* 24 Ala. 250 ; *Harris v. Parker,* 41 Ala. 604 ; *Mundin v. Bailey,* at present term ; *Rogers v. Ross,* 1 Johns. Ch. 608.

If counsel in .this case went beyond the line marked out above, and became the advocates of one of the several claimants, against the asserted right of some other·claimant, to that extent ·they· were not counsel of .the trustee, and, for such services, would· have no·proper charge against .the trustee or

[Grimball v. Cruse.]

the trust fund.   But let not this be misunderstood.   In obtaining a construction of Dr. Moore's will, the necessities of advocacy would impel counsel to the attempted maintenance of an interpretation, which, in the very nature of things, would benefit one claimant more than another.   Such service is in the interest of truth and the right, is within the province and duty of a faithful trustee; and if the service be rendered in promotion of the trustee's duty of fidelity to the trust, and not in the interest of one of the rival claimants, then such service should be paid for out of the trust fund.

· Under the principles above declared, Humes & Gordon, under their stipulated fee of five hundred dollars, were bound to conduct the case of the bill filed by them to a final decree in the Chancery Court.   It can not be regarded as compensation to them for their services in resisting, in the several courts, the attempt of Grimball to remove the cause into the Circuit Court of the United States, or the appeal of the original cause to this court, so far as that appeal involved the interests and duty of the trustee, nor for services rendered Cruse in making his several settlements as trustee.   Neither can it embrace services. rendered in other matters, not growing out of that suit, if there were such other services rendered.   All of the above are proper charges against the whole trust fund, and should be assessed *pro rata* against the two funds—the landed interests, including their rents and profits, and the personal estate, including its accumulations.   This, because the real estate goes to the brothers and sister, as heirs at law, and the personal estate goes to the personal representative.

2. It is one of the uncontroverted facts in this case, that Cruse undertook the trust at an agreed salary of one thousand dollars *per annum*.   In making his several settlements as trustee since the death of Mrs. Grimball, he has claimed, and had allowed to him, as "salary, $1,000."   He now claims an allowance, for extra services, since the death of Mrs. Grimball, of fifteen hundred dollars *per annum*, aggregating six thousand dollars, as extra compensation.   The register reported five hundred dollars a year as extra compensation, making two thousand dollars for the four years; and the chancellor increased it to six thousand, and so decreed.   It is claimed, in vindication of this extra compensation, that the trustee managed the trust with great skill and success, adding greatly to the security and value of the trust estate in his hands.   This can not be rightfully claimed as extra service.   These precise services the law expects and requires of a trustee; and, in their performance, he simply does his duty.   Acting in good faith, and with reasonable diligence, he is not held an insurer that every investment he may make will, in the light of after

VOL. LXX.

[Grimball v. Cruse.]

experience, prove the most profitable that could have been made. All men are liable to err, and, in these days of commercial "rings" and "corners," the best devised investments are subject to fluctuations, which the most sagacious can neither prevent nor foresee. Hence it is that, when a trustee, acting within the sphere of his discretionary authority, brings to the service good faith and reasonable diligence, he is not held responsible for accidental mistakes, or for the miscarriage of an occasional investment.—*Gould v. Hayes*, 19 Ala. 438; *Henderson v. Simmons*, 33 Ala. 291; *Lyon v. Foscue*, 60 Ala. 468. So, if by some freak of trade, or manipulation of capital, an investment should develop unusual profits, we can perceive no greater reason for increasing the compensation in such case, than would exist for diminishing it in the case first above supposed. This principle will apply to the general management, preservation and investment of the funds, and to the making of reports and settlements. If extra labor was cast on the trustee, by virtue of the litigation, which we have seen he was justified in inaugurating (and we think there was), then a reasonable allowance should be made to the trustee for this extra labor. Whatever salary, commissions, or compensation may be allowed the trustee, for reasons stated above, should be assessed *pro rata* upon the two funds, as directed above in reference to attorney's fees.

4. The remaining question is one of first impression in this court. Under the provisions of Dr. Moore's will, the common source of title to the property in controversy, several shades of claim were asserted. Dr. Moore left surviving him four children, Mrs. Grimball being one of them. After she reached the age of twenty-one years, she married Mr. Grimball, who was a resident of the State and city of New York. He and his wife continued to reside there, until her death without issue, only a few months after her marriage. She died intestate. Grimball, the husband, took out administration upon her estate in the State and city of New York, her domicile at the time of her death. The property in controversy was devised and bequeathed to her by her father's will, with certain trusts and limitations, some of them not very clearly or fully expressed. This property, at and before her marriage, was in the hands of Cruse as trustee, and so continued in his hands, all being in Alabama, at the time of her death. She left surviving her two brothers, David and Samuel Moore, and a sister, Mrs. Rhett. Rison became administrator of her estate in Alabama. The rival claims to her property took the following forms:

Her brothers and sister claimed that, under the will of Dr. Moore, Mrs. Grimball took no interest in the *corpus* of the property she acquired thereunder, but only the rents, income

[Grimball v. Cruse.]

and profits, which should accrue during her life, with remainder
to her children, if she left any; and in default thereof, then,
by reversion, to the estate of Dr. Moore, to be divided and
distributed as of his estate; in other words, that only the
usufruct was given to Mrs. Grimball, with a disposition of the
fee, or absolute title, contingent on her leaving children; and
the contingency failing, the residue of the title to fall back
into Dr. Moore's estate, to be divided and distributed as of his
estate.   In a modified form, they contended that, if not sus-
tained in the construction claimed above, they were at all events
entitled to·the real estate as next of kin and heirs at law of
Mrs. Grimball, whose estate was equitable, excluding the marital
rights of the husband.

For Mr. Grimball it was contended that, inasmuch as Mrs.
Grimball died intestate, and a resident of New York, the suc-
cession to her personal estate was controlled by the laws of
New York; that under those laws, the husband is entitled to
have the administration of his wife's estate; that by due ap-
pointment he had become and was the domiciliary adminis-
trator of her estate, and was therefore entitled to her personal
assets; that, being authorized to demand and recover her per-
sonal assets, she dying without issue, no one could assert a par-
amount right to them, and the law converted this right of
possession in him into an absolute title, because no one could
recover them from him.   Part of this claim rested on the
contention, that under Dr. Moore's will the title of Mrs. Grim-
ball was a fee in the lands, and an absolute title to the person-
alty, to be cut down to a life-estate in the event she left issue;
and that, dying without such issue, the absolute right to the
property remained in her estate.   It was also contended for
Mr. Grimball, that he was entitled to a life-estate in the lands,
of which his wife died seized.   For Mr. Rison, the adminis-
trator, it was contended, that he, as the resident administrator,
was entitled to the personal assets, for purposes of administra-
tion.   This claim, *pro tanto*, harmonized with the contention
of Mr. Grimball, that his wife had died the absolute owner of
the property.   All these questions were raised, and discussed
with great ability and research, in the trial of the cause made
by the bill, which was filed by Cruse,·to obtain a construction
of the will of Dr. Moore, and for directions.

In the preparation and trial of this cause, Cruse, the trustee,
was represented by Humes & Gordon.   David Moore first, and
Harris, his guardian, after the said David had been adjudged
*non compos*, also employed Humes & Gordon to represent his
interests in the trial of said issues.   Walker & Shelby were em-
ployed by Mrs. Rhett, to represent her interests in the same is-
sues.   Samuel Moore had no counsel, but, aided by the advice

Vol. lxx.

of a professional friend, filed his own pleadings.   His interests were identical with those of David Moore and Mrs. Rhett.   Mr. Grimball had counsel of his own, but no question about their compensation is raised before us.   The stake was relatively large, and, as we have said, the questions were discussed with great zeal and ability.   The decision of this court met no one's wishes, except, perhaps, those of Mr. Rison.—See *Grimball v. Patton*, at present term.   The lands were decreed to Mrs. Grimball's brothers and sister, and the personal assets to Mr. Rison, her administrator.   To whom the personal property should be distributed, after passing through administration, was a question not properly before the court, and it was not decided.

In January, 1881, in response to a motion therefor, the chancellor made a decretal order, and, among other things, " ordered and decreed, that it be, and is hereby, referred to Robert H. Wilson, as special register in this case, to ascertain and report, as soon as practicable, what would be a reasonable compensation to Messrs. Humes & Gordon and Walker & Shelby for services aa solicitors of all the parties defendants in this cause (except John Grimball), in such part of said cause as has been finally disposed of by the Supreme Court."   The questions disposed of by this court were the interpretation of Dr. Moore's will, the order that the lands be surrendered to the brothers and sisters, heirs at law, and that the personal property be turned over to Rison, the administrator.   The special register reported, "that the real estate is of the value of thirty thousand dollars, and that a reasonable compensation to be made to the solicitors of record for all the defendants (except John Grimball), for their services in this branch of the case, would be, as shown by the testimony of experts learned in the law, an amount, in the opinion of said experts, varying from four thousand dollars down to less than ten per-cent. upon the value of such recovery. I report the sum of three thousand dollars, as reasonable compensation to said solicitors, Walker & Shelby and Humes & Gordon, for the service in this branch of the case."   The contest over the real estate was a claim by Grimball that he was entitled to the life-estate, which was resisted by the heirs at law. As we understand the report of the register, he finds thirty thousand dollars to be the value of the land in fee, and does not report the value of the life-estate.   The final ruling of the chancellor, in reference to this item, is as follows:   " It is further ordered and decreed, that the exception to the register's report, as to the allowance of $3,000 to Messrs. Walker & Shelby and Humes & Gordon, attorneys, for their services as shown, be also sustained, and their motion to be allowed the sum of four thousand dollars, as a reasonable fee, ought to have been allowed.   It

[Grimball v. Cruse.]

is therefore ordered and decreed, that the said solicitors, Walker & Shelby and Humes & Gordon, have and recover the sum of four thousand dollars, for their services in the premises, and that said S. R. Cruse, as trustee, ·pay to them, or two thousand dollars to each of said firms, whose receipts therefor shall be allowed as vouchers to that extent, on final settlement of said trust estate." The record contains no other order, showing out of what fund this payment was to be made.

There are cases, such as creditors' bills, bills to declare property subject to the payment of debts, and bills of kindred character, where the result of the litigation and judgment is to bring to light, and place within the control of the court, a fund which, without such legal proceedings, would be beyond the reach of creditors; cases in which outside creditors, if they wish to share in the fund, must come in, and avail themselves of the decree of condemnation, and, necessarily, of the professional labor and research which have discovered the fund, and made it available. In such cases, all who come in, and share the benefits of such recovery, must take them *cum onere*. They must contribute to the expense, as a condition upon which they can claim to share in the benefits.—*Mason v. Codwise*, 6 Johns. Ch. 297; *Brown v. Bates*, 10 Ala. 432.

The principle stated above is not applicable to this case. The purpose of the bill filed by Cruse was to obtain a construction of Dr. Moore's will, and directions as to the descent and distribution of the property. A proper decree in that cause necessarily determined to whom the lands should go. If some of the parties asserting claim to the property employed counsel to press an interpretation of the will favorable to their views and interests, this was their act, their contract; and if others, standing in like interest, were benefited by the decision thus obtained, we know of no rule of law for fastening a liability on them for any part of the fee. Few decisions are rendered, affecting property rights, that do not in some respects benefit others, who are not parties to the suit or the retainer. To travel beyond the parties making the contract, in search of an implied promise to pay for such incidental benefit, would introduce a new and dangerous principle in implied contracts, the extent of which it is difficult to conjecture. In *Roselius v. Delachaise*, 5 La. Ann. 481, the principle declared is well expressed in the head-note, as follows: "However valuable the services of an attorney may have been to a party in a suit, in which he represented others having a similar interest, he can not recover a fee from a party who has not employed him." In 1 Wait's Act. & Def. 456, speaking of the right of an attorney to recover for services rendered, the author uses this language: "He can not recover of his client for professional services, without proving a retainer; and even

[Grimball v. Cruse.]

proof of the actual performance of the services is not sufficient, where there is not proof of a knowledge or a recognition of the services, by the client." In *Savings Bank v. Benton*, 2 Metc. Ky. 240, a suit was pending against two defendants; the report not showing whether they were equally bound, or otherwise. One defendant employed counsel to represent him and the other defendant. That other defendant was sued for the fee. The court said: "If it be true, as the testimony conduces to prove the fact to be, that the appellee was employed by Sandford to act as counsel for him, and also for the savings-bank, of which the latter was apprised, and that he was not employed by the savings-bank as counsel in the suit, then no inference could arise that the savings-bank was to pay him for his services, although it may have known that the services were rendered, and may have received the benefit of them."—*Cooley v. Cecile*, 8 La. Ann. 51; *Hotchkiss v. LeRoy*, 9 Johns. 142; *Burghart v. Gardner*, 3 Barb. Sup. Ct. 64; *Chig., St. Ch. & Miss. R. R. Co. v. Larned*, 26 Ill. 218; *Cooper v. Hamilton*, 52 Ill. 119; *Turner v. Meyers*, 23 Iowa, 391. In *Ex parte Plitt*, 2 Wallace, jr. 453, the court probably went further than this, but we decline to follow it. On the question we are considering, we find nothing in the testimony authorizing the court to raise an implied promise on the part of Samuel H. Moore, or a charge for said services to be fastened on the trust estate.

There are cases, where the court, having the fund within its control, or otherwise having the power to do so, will, on proper application, aid and protect an attorney in the assertion of his claim and lien for services rendered.—*Ex parte Lehman, Durr & Co.*, 59 Ala. 631; *Warfield v. Campbell*, 38 Ala. 527; *McPherson v. Cox*, 96 U. S. 404; *Hunt v. McClanahan*, 1 Heisk. 503. That question is not presented in the item of charge we are considering.

Let the costs of appeal in the court below and in this court be paid as follows: one-half by Cruse individually, one-third by Humes & Gordon, and one-sixth by Walker & Shelby.

Reversed and remanded.

BRICKELL, C. J., not sitting.