FARMERS' LOAN & TRUST CO. et al. v. GREEN et al.

GREEN et al. v. FARMERS' LOAN & TRUST CO. et al.

(Circuit Court of Appeals, Fifth Circuit. February 25, 1897.)

Nos. 500 and 501.

RAILROAD MORTGAGE FORECLOSURE—ALLOWANCE FOR ATTORNEY'S FEES AND EXPENSES—PURCHASER RESISTING CONFIRMATION OF SALE.

A purchaser of a railroad at foreclosure sale, who resists the confirmation of the sale, and ultimately procures the setting aside of a decree of confirmation, and a release from his bid, is not entitled to be paid, out of the trust fund, his attorney's fees and expenses incurred in that behalf, but can only receive the ordinary taxable costs; and it is immaterial that the services of his counsel may have incidentally benefited the fund.

Appeal from the Circuit Court of the United States for the Eastern District of Texas.

The Farmers' Loan & Trust Company, as trustee under the first mortgage bonds on what was known as the "Waco & Northwestern Division of the Houston & Texas Central Railway," filed its bill of complaint against the Houston & Texas Central Railway Company et al., seeking a foreclosure on said Waco & Northwestern Division. On March 16, 1892, the court entered a final decree ordering a sale of the trust property. On December 28, 1892, the property was offered for sale by a special master, and E. H. R. Green, appellant in cause No. 501 and appellee in cause No. 500, being the highest bidder therefor, became the purchaser of the property, and deposited with the master the sum of $25,000, as required by the terms of the sale. On January 11, 1893, the master filed his report of the sale, stating that the bid of E. H. R. Green for $1,375,000 was the highest made at the offering, and that the property had been struck off to him. On January 18, 1893, Collis P. Huntington filed a petition of intervention, alleging that he was a holder of a majority of the first mortgage bonds of the said Waco & Northwestern Division, and praying that he be permitted to intervene pro interesse suo, and to become a party to the cause, which petition was granted by the court. On February 3, 1893, said Huntington filed qualified or conditional exceptions to the master's report of sale, alleging therein that in the notice of sale by said master reference was made to the foreclosure decree "and the schedules on file with the clerk of said court, at Galveston, Texas, subject to the inspection of all intending bidders at such sale," for further details of the properties to be sold; that on October 28, 1892, the receiver, Dillingham, had filed in the court a schedule of property, which contained the following vague reference to certain land notes: "The receiver has in hand land notes, secured by deed of trust on lands conveyed, of the face value of ninety-six thousand three hundred and thirteen dollars and eighty-seven cents ($96,313.87)"; that neither the decree of foreclosure rendered on March 16, 1892, nor any other order or decree of the court, authorized the sale of said land notes; that the master had filed in the court his report of said sale at Waco, Tex., on December 28, 1892, and had made mention therein of said notice of sale, and of the reference to the receiver's schedule on file with the clerk of the court; and he excepted to said master's report, and to the confirmation of said sale, if and so far as the references in said notice and report may be construed as including said land notes in the properties to be sold at said foreclosure sale. On February 22, 1893, the complainant moved the court to confirm the sale of December 28, 1892, and to direct that proper conveyances be made to the purchaser. On March 14, 1893, the purchaser, Green, filed his first pleading in court, and alleged that his bid at the sale was based upon the schedule of property of said railroad referred to in the notice of the master's sale; that among other items set out in said schedule was that about $95,000 in vendor's lien notes were in the hands of the receiver, being a part of the property of said railroad ordered by the court to be sold; that upon the strength of said items in said schedule (the decree but vaguely and generally describing the property ordered to be sold), to which

he was referred by the master's notice of said sale, the bid made by him was based in good faith; and that C. P. Huntington had filed in the court exceptions to the passage of said notes under the sale. Wherefore he prayed the court "that in the event such exceptions of said Huntington be sustained, that he be relieved from his bid as made, and the deposit made by him in this matter be returned to him, and that said property be resold under such directions as by the court may be proper." Depositions were taken at the hearing on March 14, 1893, and on that day the matter of the confirmation of the master's report of sale and of exceptions of the intervener, Collis P. Huntington, and of the petition of the purchaser, E. H. R. Green, for relief from his bid, came on to be heard. It was found by the court that the land notes referred to did not pass at the master's sale, and it was ordered, adjudged, and decreed that the sale be confirmed, excluding the land notes, and that the special master make a deed to the purchaser in accordance with the final decree rendered in the cause on the purchaser's compliance with the terms of the sale; and it was further ordered, adjudged, and decreed that the application of the purchaser, E. H. R. Green, for relief from his bid, be denied. On April 1, 1893, the term of the court at which the said decree of confirmation was rendered adjourned sine die. On April 13, 1893, said Green filed a petition for a rehearing of all the matters embraced in the decree of March 14, 1893, and prayed that said decree be set aside, and that he be released from his bid. There were several grounds stated in the petition for the relief prayed for, the most material of which was that there was a deficiency in the property sold, in that in the notice there were offered for sale about 277,230 acres of land, while the actual amount sold was found to be 222,459¾ acres. On June 10 and 15, 1893, respectively, exceptions and answers were filed by the complainant and by the intervener, Huntington, to said petition, and on June 27, 1893, the matter of said petition came on to be heard, and a decree was rendered by the court denying the same. On November 6 and December 16, 1893, respectively, motions were filed by said intervener and the complainant to require said Green to comply with his bid, and complete his purchase, and, in default thereof, that the property be resold at his risk and expense. On December 9, 1893, and March 16, 1894, respectively, Green filed answers to the said motions. On March 5, 1895, the cause came on to be further heard upon the said motions and upon the answers and objections thereto of the said Green, whereupon it was adjudged and decreed by the court that the said sale of December 28, 1892, be set aside, and that the said purchaser, E. H. R. Green, be relieved from his bid, and the deposit made by him of $25,000 be returned to him, without interest, and that he go hence without day; and that the cost of the proceedings subsequent to said sale, in regard to the confirmation and enforcement thereof, so far not heretofore paid, be taken and paid out of the proceeds of the sale of the property hereinafter provided for, or funds in the hands of the receiver, as the court may hereafter order; and that the said property be resold in the manner and upon the terms described in the decree. By this decree there was reserved to said Green the right to apply to the court for an allowance to cover his expenses and counsel fees, the right to such allowance being reserved for future determination in the cause. On October 22, 1895, an application was made by Green for an allowance to cover his expenses and counsel fees. The application contained substantially the history of the proceedings in the cause. To this application demurrers were filed by the complainant the Farmers' Loan & Trust Company, and by the intervener, Collis P. Huntington. The cause coming on to be heard upon the said application and upon the demurrers thereto, the court overruled the demurrers, and held that the applicant was entitled to a reasonable fee in the premises, to be paid out of the funds in court; and the application was referred to a special master to hear proof thereon, and to report the amount for which the allowance should be made to cover such reasonable counsel fees; and also to hear proof upon and report the amount of the expenses and disbursements of the said Green. The report of the master was filed February 18, 1896, and on February 24, 1896, exceptions to the said report were filed by the complainant and Collis P. Huntington, Moran Bros., and H. K. McHarg, bond owners and interveners in the cause, and by E. H. R. Green. The substance of the exceptions taken by the complainant and

interveners was that the master erred in reporting that the said Green was entitled to any allowance for counsel fees and expenses; and the substance of Green's exceptions was that sufficient allowance was not made for his expenses. On February 26, 1896, the court overruled all exceptions to the master's said report, and decreed that said Green be allowed the sum of $10,889.55, with 6 per cent. per annum interest from date until paid, together with the costs, to be paid out of any funds in the hands of the receiver in this cause. From this decree these appeals were taken.

L. W. Campbell, for appellants Moran Bros. and Henry K. McHarg.

J. P. Blair, for appellant Huntington.

Chas. W. Ogdon, for appellee Green.

E. B. Kruttschnitt, for appellees Lackawanna Iron & Coal Co., Southern Development Co., Morgan's Louisiana & T. R. & S. S. Co., and Pacific Improvement Co.

Before TOULMIN, MAXEY, and PARLANGE, District Judges.

TOULMIN, District Judge, after stating the case as above, delivered the opinion of the court.

In our view of this case, we need only to consider the question whether Green is entitled to any allowance for counsel fees and expenses to be paid out of the funds in the hands of the receiver, without regard to the question whether he was an innocent purchaser, free from laches or fault in the premises. There is no question as to the power of a court of equity, in cases of administration of funds under its control, to make such allowance to those who have instituted proceedings for the benefit of the fund as justice and equity may require. It is a well-recognized rule of equity that when a trust fund is brought into court for administration and distribution, it must bear the expense incurred in proper proceedings taken for the purpose. This expense necessarily includes the fees of the counsel who brings the suit, and who is considered as representing all persons having a common interest in the fund brought into court by it, and who avail themselves of its benefits, and of counsel who may be employed by authority of the court to perform services beneficial to the trust fund. Trustees v. Greenough, 105 U. S. 527; Jacksonville, T. & K. W. Ry. Co. v. American Const. Co., 6 C. C. A. 249, 57 Fed. 66; Bound v. Railway Co., 59 Fed. 509; Insurance Co. v. Dellatorre, 17 C. C. A. 310, 70 Fed. 643. But this rule does not apply in favor of one who sets up an independent right to participate in the funds in litigation, and whose claim involves an antagonistic interest to that of the complainant in the suit, and those of the same class or of like interest. Insurance Co. v. Dellatorre, supra; Bound v. Railway Co., supra; Strong v. Taylor, 82 Ala. 213, 2 South. 760; Grimball v. Cruse, 70 Ala. 534; Ryckman v. Parkins, 5 Paige, 545.

The contention of the Farmers' Loan & Trust Company and others is that Green's case does not belong to that well-defined and limited class of cases in which courts of equity have allowed a successful litigant to be paid his counsel fees and expenses out of a trust fund under the control of the court; that the proceedings for the counsel fees and expenses in which Green now seeks an allowance were not brought to create or preserve any fund in which the complainant or intervening bondholders are interested, but that Green's attitude in

such litigation has always and necessarily been adverse and hostile to the complainant and the bondholders. The litigation between the complainant and the interveners, the bondholders, on the one side, and Green, the purchaser, on the other, was a contest as to the right of the former to have the sale confirmed and the purchase completed, and of the latter to have the sale set aside, and to be released from his bid. Clearly, this litigation involved antagonistic interests, and the parties to it occupied adverse positions in reference to its subject-matter. A purchaser under a decretal sale is one of the parties litigant, where he resists, as he has the right to do, the confirmation of the sale. He occupies the position, respecting costs and expenses, of any other party litigant. If causes exist why the sale should be set aside, and it is for equitable reasons set aside, the party unsuccessful in the litigation should pay the costs. It will not do to invite or encourage the purchaser to resent any effort to have the sale confirmed, and to compel him to comply with his bid, upon the idea that he will incur no cost or expense in the litigation. The purchaser under a judicial sale submits himself to the jurisdiction of the court, and may be compelled to carry out his contract, but he is also entitled to the protection of the court in respect to the avoidance of the purchase if by reason of imperfections in the title or otherwise he is freed from his bid. He should be treated fairly, and, being discharged from his purchase, he is entitled to have his deposit restored to him, and to have his costs.—the ordinary taxable costs which are chargeable as between party and party. 2 Jones, Mortg. § 1648; Morris v. Mowatt, 2 Paige, 586; Ryckman v. Parkins, supra. To direct the payment to the purchaser in this case of any allowance for counsel fees and disbursements out of the funds in the hands of the receiver would be tantamount to taxing it against the bondholders. The practical question, then, is, shall the bondholders bear the burden of the litigation arising out of this contest between the parties? Must they pay the fees of the purchaser's counsel, who were not employed or controlled by them? We see no reason why the bondholders should be required to do more than pay the legal, taxable costs, like any other unsuccessful litigant, and we know of no principle of law or of equity which authorizes the court to tax as a part of the costs the counsel fees and disbursements of the successful party in the litigation. The United States supreme court, in the case of Oelrichs v. Spain, 15 Wall. 211, after stating that the rule at law in debt, covenant, and assumpsit was against the allowance of counsel fees, held that counsel fees were not recoverable on an injunction bond, and said that:

"In equity cases, where there is no injunction bond, only the taxable costs are allowed to the complainants. The same rule is applied to the defendant, however unjust the litigation on the other side, and however large the expensa litis to which he may have been subjected. The parties, in this respect, are upon a footing of equality. When both client and counsel know that the fees are to be paid by the other party, there is danger of abuse. * * * We think the principle of disallowance rests upon a solid foundation, and that the opposite rule is forbidden by the analogies of the law and sound public policy."

Suppose the circuit court had not concluded to render the decree of March 5, 1895, releasing Green from his purchase and directing a resale of the property, but had maintained the correctness of the decree

of March 14, 1893, confirming the sale and denying Green relief therefrom, could it be reasonably claimed, or even suggested, that the complainant and the interveners should recover from Green their counsel fees, and incidental expenses incurred by them, in resisting his application to be released from his purchase, and in prosecuting their motion to have him comply therewith, or that he should be taxed with such fees and expenses as a part of the costs of the contest? Clearly not, and, if not, then the parties to the litigation were not "upon a footing of equality" if Green's claim is well made.

But it was submitted in the argument of Green's counsel that the disbursements by him for counsel fees, and for other expenses incurred by him in securing a release from his purchase, resulted in curing many defects in the foreclosure proceedings, the correction of which necessarily benefited the trust property, and increased its salable value. If it be admitted that Green's counsel, in representing the interest which retained him, incidentally contributed to the benefit of the trust fund, and to the common interest of the bondholders, still he can legally claim from them no compensation for his services. They were voluntary services, as far as they were concerned. They were not rendered under any contract of employment, either expressly made by them, or superinduced by the law upon the facts of the case, and they were rendered with no view or purpose of benefiting the bondholders or the trust fund. To make such services a charge on the trust fund they must have been rendered for the purpose of benefiting that fund. Bound v. Railway Co., supra; Grimball v. Cruse, 70 Ala. 544, 545; Trustees v. Greenough, supra. The supreme court of South Carolina, in Hand v. Railroad Co., 21 S. C. 179, in stating the rule, said:

"No one can legally claim compensation for voluntary services to another, however beneficial they may be, nor for incidental benefits and advantages to one flowing to him on account of services rendered to another by whom he may have been employed. Before a legal charge can be sustained, there must be a contract of employment, either expressly made or superinduced by the law upon the facts."

Our opinion is that the decree appealed from is erroneous in so far as it overrules the exceptions to the master's report filed by the complainant and the interveners, and decrees an allowance to E. H. R. Green for counsel fees and expenses to be paid out of the funds in the hands of the receiver. The case must accordingly be reversed, and the cause remanded, with directions to the circuit court to set aside its former decree, and, in lieu thereof, to make and enter a decree consistent with this opinion. The decree to be entered by the circuit court pursuant to the mandate of this court should order, adjudge, and decree that the exceptions of the Farmers' Loan & Trust Company and the interveners, Collis P. Huntington, Moran Bros., and Henry K. McHarg, to the report of the said special master, be sustained; that it should further order, adjudge, and decree that said Green be denied any allowance to cover counsel fees and expenses other than the ordinary taxable costs of court which are provided for in the decree from which these appeals were taken. Reversed and remanded.