### LAMAR et al. v. HALL & WIMBERLY et al.

(Circuit Court of Appeals, Fifth Circuit. March 1, 1904.)

No. 1,274.

1. TRUST FUND—PROTECTION—COMPENSATION.

One jointly interested with others in trust funds, who in good faith maintains for himself and others interested like him necessary litigation to secure or protect them, is entitled to reimbursement out of the funds protected or secured. The principle on which such allowance is based is that the plaintiff represented the others for whom he sued. But a solicitor cannot make another person his debtor by rendering services in his behalf without his express or implied assent.

2. CORPORATIONS—DISSOLUTION—RECEIVERS—TRUST FUNDS—ATTORNEY'S FEES —ALLOWANCE.

Suits having been brought by lien creditors against a corporation, and a receiver having been appointed, petitioners, as attorneys for a minority

stockholder, filed a bill on his behalf, and on behalf of all others similarly situated who should come in and become parties and share in the expense of the proceedings, alleging that the former suits had been brought in bad faith, etc. The bill contained a prayer for the appointment of a receiver to operate the property, pay the debts, and thereafter to turn over to the stockholders the property remaining. A co-receiver was appointed on such petition, the suits consolidated, and after trial, in which the allegations of fraud of the minority stockholder's bill were not proved, the court ordered a sale of the property for the payment of debts. A sale was had, and, on petitioners' application, was set aside for inadequacy of price, and another sale ordered, and an upset price fixed, which was $40,000 higher than the amount bid at the previous sale, and the property was subsequently sold to the lien creditors for such sum, which was insufficient to pay the liens. *Held*, that the petitioners were not entitled to attorney's fees, payable out of the proceeds of such sale.

Appeal from the Circuit Court of the United States for the Southern District of Georgia.

Wm. K. Miller, for appellants.

Marion Erwin, John I. Hall, and Olin J. Wimberly, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. Hall & Wimberly and Erwin & Callaway, attorneys and solicitors, filed a petition in the court below praying that fees for services rendered by them be fixed and allowed, and paid out of a trust fund which was in court for distribution. The petition was referred to a special master, who made a report adverse to it; but, on exceptions filed by the petitioners, the report of the special master was disapproved by the court, the exceptions sustained, and a decree entered allowing the petitioners $1,500 as compensation for their services as solicitors, and directing that the same be paid by the receiver out of the trust funds in court. William Firth Co. v. Millen Cotton Mills, 129 Fed. 141. This appeal was taken from that decree, and it is assigned that the court erred in sustaining the exceptions to the master's report, because the solicitors named were not entitled to have their fees paid out of the trust fund in court.

In order to understand the question to be decided, it is necessary to make a statement of the facts:

Three bills in equity were filed in the court below:

(1) William Firth Company et al. v. Millen Cotton Mills. This was a suit brought January 6, 1902, by creditors having liens upon the property of the Millen Cotton Mills, a corporation. The bill described the debts and liens, and prayed for their enforcement by a sale of the property of the defendant corporation, and a distribution of the assets among the lien creditors. There was a prayer, also, for the appointment of a receiver of the property of the defendant. The circuit court on January 6, 1902, appointed John R. L. Smith receiver, who took possession of the property of the defendant corporation.

(2) C. E. Riley & Co. et al. v. Millen Cotton Mills et al. In this suit, brought April 11, 1902, it was asserted that the complainants had furnished machinery to the defendant corporation, and the complainants claimed liens therefor, and sought to enforce them. It was alleged that the court was already in possession of the defendant corpo-

ration's property, and that the complainants' liens were superior to the mortgage debts; that defendant corporation was insolvent; and that the stockholders had no interest in the property of the defendant corporation "until they pay or cause to be paid off its debts."

(3) Southern Cotton Mills & Commission Co. v. Millen Cotton Mills et al. The bill beginning this suit was filed on January 23, 1902, after a receiver had been appointed under the first bill, and after he had taken possession of the property of the defendant corporation. In this suit the complainant's solicitors were Hall & Wimberly and Erwin & Callaway, the petitioners in the court below, whose compensation is involved in the present appeal. The complainant in this suit, a minority stockholder in the Millen Cotton Mills, alleges that the first suit was—

"A part and parcel of a fraudulent and wrongful scheme, purpose, and conspiracy on the part of the defendants herein named to wreck the said Millen Cotton Mills, and cause its properties to be sold and purchased for the benefit of the majority stockholders of the Millen Cotton Mills, to the utter destruction of the rights and interest and property of the minority stockholders therein."

The third paragraph of the bill is as follows:

"Your orator, the Southern Cotton Mills & Commission Company, is a minority stockholder in said Millen Cotton Mills, and brings this bill against the said Millen Cotton Mills and its officers, directors, and majority stockholders, and the other defendants named, colluding and confederating with them; and your orator brings this as a stockholders' bill, for the benefit of itself and all other stockholders similarly situated who may come in and be made parties hereto, and share the expense and costs of this proceeding."

The details of the wrongful scheme are stated, but it is unnecessary to repeat them. It is alleged that the mill properly operated could reduce and in time pay its indebtedness, and that in that way the property could be saved to the stockholders. In brief, the purpose of the bill was to prevent the sale of the Millen Cotton Mills, on the ground that the suit brought by the William Firth Company and others was a fraudulent scheme between the complainants in that suit and the majority stockholders of the defendant corporation, and to provide for the payment of its debts by operating the mills. The prayer was for the appointment of a receiver or receivers, and that the court "may, through its receiver, hold said property until said property can be turned over to the stockholders who are not participants or guilty of any of the fraudulent acts or wrongs hereinbefore complained of."

This bill was presented to a judge of the court below on January 21, 1902, and an order was made appointing Tracy I. Hickman and John R. L. Smith temporary receivers to take charge of all the property and assets of the Millen Cotton Mills, and its books and papers, "and continue the possession now exercised by John R. L. Smith as temporary receiver." It was further ordered that the receivers investigate the condition of the property, and report to the court the practicability of operating and paying off the debts, in accordance with the "declared purpose of the bill." The defendants named in the several bills filed their several answers. On April 12, 1902, it was ordered

that "the said several cases [referring to the three chancery suits] be consolidated and tried as one cause," and that the temporary receivers be made permanent receivers. On June 7, 1902, an order was made in the cases directing the sale of the property of the Millen Cotton Mills. It provided that the successful bidder should deposit a certified check for $10,000 on account of his bid. The property was purchased for $50,000 by Joseph R. Lamar, trustee for the lien creditors. He made the deposit of $10,000 required by the order. The sale having been reported to the circuit court, the Southern Cotton Mills & Commission Company, represented by Hall & Wimberly and Erwin & Callaway, filed objections to the confirmation of the sale. These objections were sustained, the circuit court refusing to confirm the sale. The circuit court directed the commissioners, who were theretofore ordered to sell the property, to advertise for bids, and to endeavor to procure a bid for it at "an upset price" of $90,000. Under this order Joseph R. Lamar, trustee for the lienholders, increased his bid to $90,000, and at that price the sale was confirmed. Lamar, as trustee, having deposited $10,000 in court under the order, paid the remainder of the purchase money ($80,000) by crediting the amount on established liens against the property. After paying costs and other allowances out of the money deposited in court, and applying the balance of the purchase money to the lien creditors, there was due to them and unpaid $7,888.76. Under the order of the circuit court, $2,000 of the $10,000 deposited in court was retained in the hands of the commissioners to await the decision of the court on the solicitors' petition for fees.

The single question to be decided is whether or not the solicitor's fees due to Hall & Wimberly and Erwin & Callaway for services which we have described are a proper charge on the trust fund in court.

We wish to say in the beginning that we do not doubt the distinguished attorneys who have made the claim on the trust fund for fees have done so in good faith and under full conviction of the rightfulness of their claim, that the record shows they have rendered services for which they should be compensated, that the amount claimed by them and allowed by the circuit court is not unreasonable, and that we would not hesitate to allow the sum to be charged on the trust fund, if, under established equitable principles, it were a proper charge on that fund.

It may be stated as a general and unquestioned principle that each client should compensate his own solicitor, and that an attorney cannot make another person his debtor by voluntarily rendering services in his behalf without his express or implied assent. The cases which allow compensation to attorneys out of a trust fund are not in conflict with this principle, but are founded upon it, for they depend on the principle of agency; the actual plaintiff being the representative of the beneficiary of the trust. The application of this principle is of everyday occurrence in the courts. Executors, administrators, guardians, receivers, and other trustees, being the agents and legal representatives of the beneficiary or beneficiaries of the trust, are allowed credit for necessary and reasonable charges, including attorney's

fees, incurred by them in the protection and administration of the trust fund. The same principle is extended to other cases. One joint- ly interested with others in trust property, who in good faith main- tains for himself, and others interested like him, the necessary litiga- tion to save it from waste and to secure its proper application, is entitled to the reimbursement of his costs, as between solicitor and client, out of the fund to be administered. Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157; Central Railroad v. Pettus, 113 U. S. 116, 5 Sup. Ct. 387, 28 L. Ed. 915. In such cases the counsel who is employed by certain creditors or other beneficiaries of the trust, and who sues for them and others situated as they are, in a sense represents all of them; those suing having assumed to retain him for all. There is usually an express promise by the parties plaintiff to pay their so- licitor, and, if not, a promise to pay him is implied by the performance and the acceptance of the solicitor's services. It seems equally clear that the creditors or other beneficiaries of the trust who come into court and accept a part of the proceeds of the property recovered or preserved by the litigation are bound by an implied promise to pay out of the proceeds of the trust fund received by them their proportion- ate part of the reasonable compensation allowed the solicitor who successfully conducted the litigation. The underlying principle upon which those who do not appear as plaintiffs are charged with a pro- portionate part of the solicitor's fees, or upon which such fees are charged on the fund, is that the plaintiffs represented the others for whom they also sued (Farmers', etc., Trust Co. v. Green, 79 Fed. 222, 24 C. C. A. 506; Hand v. Railroad, 21 S. C. 162); and this agency, and the ratification of the course taken, are usually shown by the appearance in court of the other creditors or beneficiaries, and their claiming to share in the results of the suit.

The solicitors whose claim for fees is before the court represented minority stockholders in the defendant corporation. Before they filed the bill for the minority stockholders, lien creditors of the corporation had brought suit to enforce their liens and to have a receiver appoint- ed, and the court's receiver already had possession of the corporation's property. The minority stockholders did not, therefore, by their bill, bring the property into court. The purpose of the bill was antagonis- tic to the lien creditors, and to the majority stockholders controlling the Millen Cotton Mills. In fact, both were charged with a fraudulent scheme to sacrifice the property. This charge was not sustained, and we are justified in saying that it was unfounded. The property was sold pursuant to the prayer of the creditors' bills, and contrary to the prayer of the minority stockholder's bill. These facts seem conclusive against petitioners' claim on the trust fund. Hobbs v. McLean, 117 U. S. 567, 6 Sup. Ct. 870, 29 L. Ed. 940. It is true that, by the opposi- tion of the minority stockholder to the confirmation of the first sale, the bid was increased from $50,000 to $90,000. But at both sales it was purchased by the trustee for the lienholders, and at both sales it failed to bring enough to pay the lien debts. It made no difference whether the property sold for $50,000 or $90,000. It was paid for in either case by a credit on debts which were worthless, so far as any balance was

concerned which was left unpaid after the application of the amount of the bid as a credit. The interposition of the minority stockholder was of no benefit to the lien creditors. On the contrary, it was to their detriment more than $2,000, the amount of the increased costs of the litigation. The appellants should not be required to pay out of the fund for services which diminished the fund. Buckwalter v. Whipple, 115 Ga. 484, 41 S. E. 1010. But if the interposition of the minority stockholder had been of incidental advantage to the lien creditors, it would not make its attorney's fees a proper charge upon the trust fund. Farmers', etc., Trust Co. v. Green, supra. There is no implied promise to pay an attorney whom one has not employed, because of incidental benefits derived from his services. Grimball v. Cruse, 70 Ala. 534, 544; Roselius v. Delechaise, 5 La. Ann. 481.

But it is urged that after the cases were "consolidated" the solicitors for the minority stockholders aided in obtaining the orders to sell the property and in the administration of the fund. We think that is immaterial. In Hubbard v. Camperdown Mills, 25 S. C. 496, 1 S. E. 5, the defendant corporation's property was sold pursuant to the prayer of the minority stockholders' bill; but, the property being insufficient to pay the debts, the court held that the fees of the solicitors for the minority stockholders were not a proper charge on the trust fund. In the case at bar the minority stockholders failed to sustain their bill. And it was a bill opposing the sale of the property and charging fraud. It imposed on the lien creditors the expense of answering it. We are unable to see that it recovered, increased, or protected the trust fund, or that it benefited the lien creditors of the corporation, or that the minority stockholder, the complainant in the bill, for whom the petitioners appeared as solicitors, represented in any way the interest of the lien creditors.

The court is of opinion that the claim of the petitioners, the appellees, is not within the principle which authorizes compensation for their services to be made a charge upon the trust fund in court. The decree of the circuit court, therefore, must be reversed, and the cause remanded, with instructions to dismiss the petition and proceed in conformity to the opinion of this court.