## HUBBARD v. THE CAMPERDOWN MILLS.

1. A claim for professional services, against persons *sui juris* or their property, must, like claims for other services, rest upon contract, express or implied, made with such persons directly or through their agent or representative; otherwise there is no legal foundation for a charge, even though the services may have enured to their benefit.

2. A minority of stockholders and creditors, suing for the benefit of themselves "and such other stockholders and creditors as have not confederated together," brought action against the defendant corporation and a large stockholder and creditor, charging a fraudulent combination to bring the property to a disadvantageous sale, and under this action, with defendant's assent, a receiver was appointed and the property sold, but there was no evidence of fraud. *Held*, that attorneys for the plaintiffs were not entitled to a counsel fee out of the fund realized from this sale.

3. But the defendant corporation and the receiver were entitled to have the reasonable compensation of their counsel paid out of this fund.

4. No fact can be accepted by this court unless it appears in the "Case," or is admitted by counsel. Statements incorporated into exceptions and arguments will be disregarded unless supported by the facts appearing in the "Case."

5. *Nimmons* v. *Stewart* (13 *S. C.*, 445), explained and limited; and *held*, that a reference to ascertain the amount of a counsel fee should be upon notice to the parties interested or their counsel, and not *ex parte.*

Before WALLACE, J., Greenville, December, 1885.

The opinion states the case.

*Messrs. Perry, Perry & Heyward* and *Stokes & Irvine*, for appellants, cited 4 *Rich. Eq.*, 233; 16 *S. C.*, 621; 21 *Id.*, 162; 24 *Id.*, 238.

*Messrs. Wells & Orr*, for plaintiffs, cited 16 *S. C.*, 621; 13 *Id.*, 448; 21 *Id.*, 179; *Field Corp.*, § 398; *High Inj.*, § 767;

2 *Dan. Ch. P. & P.*, 1437 ; 2 *Coll.*, 90 ; 15 *Keen*, 358 ; 1 *P. Wms.*, 376 ; 4 *Beav.*, 297 ; 4 *Sim.*, 510 ; 2 *Myl. & K.*, 320, 818 ; 3 *Beav.*, 9 ; 4 *Johns. Ch.*, 608 ; 13 *Allen*, 474 ; 7 *Harris*, 98 ; 4 *DeSaus.*, 394 ; 2 *McCord. Ch.*, 73 ; 2 *Hill Ch.*, 121 ; *Rice Ch.*, 54 ; 4 *Rich. Eq.*, 39 ; 10 *Id.*, 204 ; 8 *Id.*, 91 ; 105 *U. S.*, 527.

*Mr. T. Q. Donaldson*, for the Camperdown Mills and the receiver, cited 1 *S. C.*, 116 ; 11 *S. C.*, 527 ; *Field Corp.*, § 419 ; *High Rec.*, §§ 188, 314 ; *Rice Ch.*, 54 ; 4 *DeSaus.*, 494 ; 4 *E. D. Smith*, 191 ; 93 *U. S.*, 352 ; 97 *Id.*, 146 ; 102 *Id.*, 1 ; 105 *Id.*, 532 ; 106 *Id.*, 286 ; 107 *Id.*, 591.

November 22, 1886.　The opinion of the court was delivered by

MR. JUSTICE McIVER.　The Camperdown Mills, a corporation duly chartered under the laws of this State, was for several years successfully engaged in the manufacture of cotton goods, running two mills, in or near the city of Greenville, South Carolina, known as Mill No. 1 and Mill No. 2.　The company having contracted debts to a large amount, which it was unable to provide for from the income, the stockholders, at a meeting held on April 28, 1883, adopted a resolution authorizing the issue of coupon bonds to an amount not exceeding seventy-five thousand dollars. The bonds were accordingly prepared and made payable to the defendant, Hamlin Beattie, or bearer, and were secured by a mortgage on all the property of the company, executed to said Beattie as trustee for that purpose.　This scheme not proving effectual for the relief of the company, only a few of the bonds having been sold and others pledged as collaterals, on January 21, 1885, a majority of the stockholders adopted a resolution for the sale of all the machinery in Mill No. 1, and the same was advertised for sale on March 11, 1885.

Thereupon this action was commenced, about March 1, 1885, by the plaintiffs, who are holders of a minority of the stock of the company, two of them being also creditors of the said company. The plaintiffs in their complaint, after stating the facts above mentioned, allege that the sale of the machinery out of one of the mills would be disastrous to the interests of the company, and

charge that the holders of a majority of the stock have wrongfully
and fraudulently confederated together to get possession and con-
trol of the entire property of the company and buy it at a sacri-
fice, to the great prejudice of the other stockholders as well as
the creditors of the company.    They therefore demand judgment
that the sale of the machinery in Mill No. 1 may be enjoined;
that the trustee, Hamlin Beattie, be enjoined from further nego-
tiating any of the said coupon bonds; that the creditors be
enjoined from enforcing their claims against the company except
under these proceedings, and that for this purpose they may be
required to come in and establish their demands; that a receiver
may be appointed, and that all the property of the company may
be sold and applied to the debts of the company, and the remainder
be distributed amongst the stockholders according to their respec-
tive rights.

On March 5, 1885, a temporary restraining order, with an
order to show cause why it should not be made perpetual, was
granted.    On March 7, 1885, sundry creditors of the corporation,
including the defendant, Hamlin Beattie, and the plaintiff, Wm.
Wilkins, issued attachments against the company, aggregating a
sum exceeding thirty-seven thousand dollars, and on the same
day considerable of the property of the corporation was levied on
under said attachments.    On or about March 21, 1885, the
defendant, Hamlin Beattie, as president of the corporation, filed
his answer, in which, amongst other things, he states that a large
majority of the stock of the company is held by parties resident
in the States of Massachusetts and Pennsylvania; that it has not
been practicable, since the service of the summons and complaint
in this case, to have a legal meeting of the stockholders, and that
he is not advised as to the position which they desire the company
to take; that while the statements in the complaint as to the
condition of the company and the official action of the stockhold-
ers are substantially true, he has no knowledge or information
sufficient to enable him to form a belief as to the truth of those
allegations in which the majority of the stockholders are charged
with improper motives and wrongful conduct, but he does know
that the sale of the machinery in Mill No. 1 was indefinitely
postponed by the officers of the company before the service of the

summons and complaint herein, and that, so far as he is advised, there is no desire or intention on the part of said stockholders to sell said machinery separately; that he concurs in the opinion that the property can be sold to the best advantage by selling it as a whole, and submits the rights of the corporation to the judgment of the court. The answers of the other defendants are not set out in the record, but it is simply stated that George F. Hall, as treasurer of the company, who seems to have been the chief manager of the affairs of the company, put in an answer, and that his answer, with that of the president, concurred in the prayer of the complaint.

On April 6, 1885, an order was granted appointing Hamlin Beattie receiver, in which it was stated that all parties agreed that one should be appointed; enjoining the creditors from enforcing their claims otherwise than under this proceeding, and requiring them to come in by a given day and establish their claims before the master; and enjoining Hamlin Beattie as trustee, as well as the officers of the company, from negotiating or hypothecating any of the coupon bonds which had not then been sold or used as collaterals. On April 8, 1885, the receiver was ordered to sell all the property of the company and hold the proceeds of sale, after paying the costs and expenses thereof, subject to the further order of the court. From the report of the master as to claims proved and from the report of the receiver on sales, it appears that the debts of the company amount to something over one hundred and two thousand dollars, while the proceeds of sale are something over eighty-six thousand dollars. It is apparent, therefore, that the creditors cannot be paid in full, and the stockholders will get nothing. It is stated in the "Case," that on the application for the appointment of a receiver, the plaintiffs contended for the appointment of H. P. Hammett and the appellants for the appointment of Hamlin Beattie.

The funds in the hands of the receiver being ready for distribution, two orders were granted by Judge Wallace, referring it to the master to inquire and report what would be a suitable fee to be paid to Messrs. Wells and Orr, attorneys for the plaintiffs, for their services in this action, and also what would be a suitable fee for Messrs. T. Q. and A. H. Donaldson, attorneys for

the Camperdown Mills and Hamlin Beattie, as receiver. Under each of these orders the master reported, "that he had held a reference, and from the evidence adduced and herewith filed, he finds" that twenty-five hundred dollars would be a reasonable and proper fee for Messrs. Wells and Orr, as attorneys for the plaintiffs, and that two thousand dollars would be a reasonable and proper fee for Messrs. T. Q. and A. H. Donaldson, as attorneys for the Camperdown Mills and Hamlin Beattie, receiver. Upon hearing these reports Judge Wallace, on December 4, 1885, granted orders confirming said reports and directing the receiver to pay these gentlemen the amounts reported as proper fees for them from the funds in his hands as such receiver.

It does not appear that Judge Wallace heard any part of the case on its merits, all the previous orders having been granted by Judge Pressley, except one which was granted by Judge Cothran. Nor does the testimony filed with the master's reports, which is all set out in the record, throw any light upon the nature of the case, or the kind or amount of the professional services rendered by the gentlemen to whom these fees were awarded, but consists simply of expressions of opinion from various prominent members of the Greenville bar of the value of the services, formed from their own knowledge of the nature and amount of such services.

From these orders of December 4, 1885, George F. Hall, as treasurer of the Camperdown Mills, and in his own right, Freeman & Vinton, the Massachusetts Loan & Trust Company, and the Nonamtum Worsted Company appeal upon the following grounds: "1st. Because the fees allowed in said orders were excessive in amount, and granted upon ex parte orders of reference obtained at chambers without the knowledge of defendants, appellants, or their counsel, and without an opportunity on their part to adduce evidence to show that fact. 2d. Because said fees were illegal, the court having no authority to direct the payment of said fees out of the funds in the possession of the receiver."

We will consider the second ground first, as that seems to be the most logical order—first to determine whether any fees could be legally allowed, before undertaking to inquire into the propriety of the mode adopted for the purpose of ascertaining the

amount which should be allowed, or whether such amount has been correctly ascertained.

First, as to the fee allowed the plaintiffs' attorneys. This subject has been before the court in three recent cases—*Hand* v. *Savannah & Charleston R. R. Co.*, 21 *S. C.*, 162; *Westmoreland* v. *Martin*, 24 *Id.*, 238; and *Ex parte Lynch and others, In re Reeves* v. *Tappan, ante* p. 193, and we think it is there settled that a claim for professional services against persons who are *sui juris*, or against the property of such persons, must, like a claim for any other services, rest upon contract either express or implied, made directly with the persons so sought to be charged, or with some agent or representative of such persons, and that the simple fact that such services have enured to the benefit of others, with whom there is no contract relation, either directly or through some agent or representative, affords no legal foundation for a charge against such other persons. So that the simple question here is, not whether the services of the attorneys of the plaintiffs have enured to the benefit of the appellants, but whether any contract relation has been established between them.

It is not pretended that there was any contract, either express or implied, between the plaintiffs' attorneys and the appellants directly, and the only ground, therefore, upon which the claim could rest would be that the plaintiffs in employing these gentlemen to commence this action, were acting as the representatives of a class to which the appellants belonged. But this is negatived by the express terms used in their complaint, where they say : "That these plaintiffs bring this action for their own protection, and for the benefit and protection of the general creditors and stockholders who have not confederated as aforesaid," thereby in terms excluding the defendants, who had previously been charged with confederating together to wrong and defraud the other stockholders and creditors from the benefit and protection of the action which these gentlemen had been employed to institute. How, in the face of this, the plaintiffs can be regarded as acting as the representatives of a class to which the appellants belong, when they employed these attorneys to bring the action, we cannot conceive. On the contrary, it seems to us that the plaintiffs, constituting only a minority of the corporation,

becoming dissatisfied with the policy which the majority saw fit
to adopt in the management of the affairs of the company, de-
clared open war against them, and by charges of gross misconduct
and fraud, of which, however, no evidence was offered,
sought to wrest from the majority the control of the affairs of the
corporation, the prime motive seeming to be to prevent what they
regarded an unwise sale of a portion of the property of the cor-
poration, which sale, however, the president of the company says
in his answer, had been indefinitely postponed before this action
was commenced, or at least before the service of the summons
and complaint.

It seems to us clear, therefore, that the attorneys employed by
the plaintiffs, in the outset, certainly could not be regarded, in
any sense, as the attorneys of or acting for the appellants. If
they were not so when the action was commenced, when did they
become so ? The nature of the allegations in the complaint ren-
dered it necessary for the appellants to employ other counsel to
defend themselves from charges which, if not unfounded, are cer-
tainly unsustained by any testimony whatever, and having thus
been compelled to employ other counsel, whose fees they will, of
course, have to pay, it would seem to be a hard measure of jus-
tice if they were also required to contribute to the payment of
the counsel of their adversaries. The fact that they afterwards
acquiesced in the appointment of a receiver and an order of sale,
cannot affect the question. This might have been prompted by a
desire to avoid tedious and expensive litigation, or the complica-
tions which might arise from the commencement of the attachment
suits after this action was commenced. The fact still remains
that by the course pursued by the plaintiffs they were compelled
to employ other counsel, who represented their interests through-
out these proceedings, and who seem to have succeeded in having
the person of their choice appointed receiver in opposition to the
person proposed by the plaintiffs.

It has been argued here that the plaintiffs "were in law and in
fact trustees," and that having in that capacity brought this
action, their expenses in so doing, including the fees of their
counsel, are properly chargeable on the assets of the corporation,
constituting the trust fund. We do not question the proposition

that a trustee is entitled to reimbursement out of the trust fund, for all expenses properly incurred in preserving or protecting that fund. But we are unable to understand how these plaintiffs can, in any sense, be regarded as trustees. They were simply stockholders in a corporation, holding only a minority of the stock, two of them being also creditors to a comparatively small amount. Being in the minority they could not control, and therefore would not be responsible for the management of the affairs of the corporation. They certainly cannot be regarded as trustees for the other stockholders, and as to the creditors, they simply stood in the relation of debtors to the extent of their interest in the corporation. We are unable to see how, in any view of the case, the fee of the attorneys for the plaintiffs can be charged on the general fund in the hands of the receiver, but think that these gentlemen must look to those who employed them or recognized them as their attorneys for their compensation.

This view renders it unnecessary, so far as this claim is concerned, to consider the questions presented by the first ground of appeal. We do not for a moment doubt that this claim has been urged in the best of faith, and under a full conviction of its rightfulness, and there is as little doubt that Messrs. Wells and Orr rendered valuable services in the case for which they should be amply compensated, and it would give us pleasure to be able to award it to them; but we have no power to subject the fund in the hands of the receiver to such payment, unless we could find some legal ground upon which to base the charge, and this we have been unable to do.

As to the fee of Messrs. T. Q. and A. H. Donaldson, as attorneys for the Camperdown Mills and for the receiver, we think it was properly chargeable on the fund in the hands of the receiver. The corporation was a necessary party to the action, and as such had a right to employ and did employ these gentlemen as their attorneys, and certainly the assets of the corporation, now represented by the fund in the hands of the receiver, should be applied to the payment of such services as these gentlemen rendered as attorneys of the corporation. The authorities cited in the argument for these respondents fully show that the counsel fees of the

receiver are properly chargeable on the funds in his hands. The receiver has a right to employ counsel to advise him as to the management of the property placed in his hands and as to his duties in the premises; and in this case, judging from the expeditious manner in which this large business has been wound up, apparently to the satisfaction of all parties concerned, the receiver must have been well advised, and his counsel should be well paid for their services. The only question is as to the mode of ascertaining the amount of such compensation.

As is usual and proper in such cases, there was an order of reference to the master to inquire and report what would be a proper fee, but the complaint is that the order was *ex parte*, obtained at chambers, and the reference was held without notice to appellants and without an opportunity on their part to adduce testimony or to be heard as to the matter referred. There is nothing in the "Case" to show that the order of reference was *ex parte*, obtained at chambers, or that the reference was held without notice, and but for the fact that it was admitted in the argument here that the reference was *ex parte*, this omission would have been fatal to the appellants so far as this point is concerned. For, as we have several times had occasion to say, and now repeat, this court cannot accept any fact unless it appears in the "Case" as prepared for argument here, or unless it is admitted upon the hearing in this court. It is true that the fact that this reference was *ex parte* is stated in the first exception or ground of appeal, but, as we have frequently held, that is not sufficient, for the very obvious reason that the exceptions constitute no part of the "Case," and while any erroneous statements contained in the "Case" may be corrected by amendment, such is not the case with the exceptions, which are entirely under the control of the appellant. Hence we can look alone to the "Case" for the facts, disregarding all statements of any other facts which may be incorporated in the exceptions or in the argument, unless such additional facts are admitted by the other side on the argument here. This matter is only alluded to for the purpose of calling the attention of the bar to the importance of observing the rule in this respect, for, as we have said, it was admitted on

the argument here that the reference was *ex parte*, and the question, therefore, is whether such a reference was proper.

Upon general principles, fully recognized by all courts in the administration of justice, it would seem to be clear that no order should be granted whereby the property of one man will be subjected to the payment of an alleged debt to another until the person whose property is so to be charged has had an opportunity to be heard as to the justice and amount of the charge so to be made. The case of *Nimmons* v. *Stewart* (13 *S. C.*, 445) is, however, relied upon, in opposition to this view, and to sustain the course pursued in the case now under consideration, and we must admit that that case does seem to support the view for which it is cited. There is, however, this difference between that case and this. There the Circuit Judge had before him the whole case, and had, therefore, the means of knowing not only the nature of the case, but also of forming his own opinion of the value of the professional services there in question, and as this court then said, "he might also have fixed the amount of the fee without reference," but simply for his own satisfaction he desired to hear the opinion of a referee, which he could either adopt or not as he might see fit, and "this," it is said, "was not one of those references of which the parties had a right to notice." In this case, however, the judge who ordered the reference, and who confirmed the master's report, had, so far as the record shows, no means of knowing anything about the nature of the case, or the amount or value of the services rendered, and was therefore dependent wholly upon the judgment of the master.

But while this may be sufficient to distinguish this case from *Nimmons* v. *Stewart*, we desire to take this occasion to express our dissatisfaction with so much of that case as gives countenance to the idea that a reference to ascertain the amount of a fee to be charged on a fund under the control of the court should ever be *ex parte*. The parties interested in the fund have a right to be heard both by evidence and argument, if they so desire, before the property or fund to which they are entitled is subjected to a charge of any kind, and hence notice of such a reference is always necessary. The case of *Nimmons* v. *Stewart* was very imperfectly presented to the court, and therefore the point as to

the character of the reference may not have received as full and mature consideration as would otherwise have been given to it. We think, therefore, that while the Messrs. Donaldson are entitled to a reasonable and proper fee out of the funds in the hands of the receiver, that there was error in the mode pursued to ascertain the amount of such fee, and that the reference for that purpose should be upon notice to the parties interested or their counsel.

The judgment of this court is, that the orders of the Circuit Court appealed from be reversed, and that the case be remanded to that court for such further proceedings as may be necessary to carry out the views herein announced.