### MECARTNEY v. GUARDIAN TRUST CO. et al. *

(Circuit Court of Appeals, Eighth Circuit. February 17, 1922.)

No. 5582.

Attorney and client ⬧155—Fee allowable to attorney from fund recovered for corporation by intervening stockholders.

When, through breach of duty by the officers or attorneys of a corporation, its rights were imperiled and stockholders were justified in intervening for their protection, a reasonable fee is properly allowable to their attorney from funds recovered for the corporation.

Appeal from District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Suit in equity by Edward A. Shedd and others against the Guardian Trust Company and others, in which Henry C. Flower was appointed receiver. From an order allowing in part only his claim against the Trust Company, Harry S. Mecartney appeals. Modified.

James A. Reed and J. G. L. Harvey, both of Kansas City, Mo., for appellant.

Justin D. Bowersock and C. W. German, both of Kansas City, Mo., for appellees.

Before HOOK, Circuit Judge, and COTTERAL and JOHNSON, District Judges.

JOHNSON, District Judge. On the 29th day of August, 1916, Henry C. Flower was appointed by the court below receiver of the property of the Guardian Trust Company in a suit pending in said court in which Edward A. Shedd and others were plaintiffs and the Guardian Trust Company and others were defendants.

On May 12, 1919, the appellant, an attorney at law, filed in said cause a claim against the Guardian Trust Company for the sum of $75,000 and interest thereon from the 15th day of April, 1916. He claimed this amount as the reasonable value of legal services rendered by him and associate counsel in behalf of the Trust Company. In his claim he averred, among other things:

---

⬧For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied August 18, 1922.

"That his claim herein asserted is for legal services * * * rendered * * * in a certain cause formerly pending in the United States Circuit Court of Appeals for the Eighth Circuit, entitled 'Central Improvement Company, Appellant, v. Cambria Steel Company, Guardian Trust Company et al., Appellees, No. 3489, and Guardian Trust Company, Appellant, v. Cambria Steel Company, Kansas City Southern Railway Company et al., Appellees, No. 3490, Consolidated Cause.' That such cause involved a review of the record in case No. 2468 of this District Court in which latter cause the Cambria Steel Company was complainant, the receivers of the Kansas City Suburban Belt Railroad Company—herein called the 'Belt Company'—et al. were ancillary complainants, and the Kansas City Southern Railway Company, intervener, and to which the Guardian Trust Company, the Central Improvement Company, and various other companies were defendants.

"That the said services * * * were rendered * * * more particularly in and about the issues raised upon and occasioned by two different intervening petitions filed in said cause in the said Court of Appeals by and in the name of Edward A. and Charles B. Shedd and Robert H. Law, stockholders of said Guardian Trust Company on behalf of said Trust Company, and have resulted in a large financial benefit to said Guardian Trust Company and all its stockholders. * * *

"That the said legal services for which compensation is here asked were rendered and furnished by this claimant and by associate counsel who were employed and paid by this claimant. * * *"

The trial court found that the sum of $15,000 was the reasonable value of the services rendered by claimant in behalf of the Trust Company and entered judgment in his favor for said sum. Claimant has appealed the case to this court and urges that, under the uncontradicted evidence in the case, he was entitled to the whole of the sum claimed by him.

The consolidated cause above mentioned was argued and taken under advisement on the 26th day of May, 1911, by the court which will be referred to hereafter when necessary for clearness as the Circuit Court of Appeals.

The status of the litigation at the time the cause was submitted will be seen from the following statement which we quote from the opinion subsequently filed in the case and reported in 201 Fed. pp. 816, 817, 120 C. C. A. 126, 127:

"On September 6, 1900, the Cambria Company filed a creditor's bill against the Belt Company, Trust Company, and other companies, the object and purpose of which was to recover certain securities belonging to the Belt Company, which had been deposited with the Trust Company and security for the Belt Company's indebtedness to the Trust Company, claiming in its bill that the Belt Company was not in fact indebted to the Trust Company, and made an application for the appointment of a receiver, and on that day receivers were appointed for the Belt Company upon the joint application of the Cambria Company and the Provident Company complainant in the foreclosure suit against the Belt Company.

"In the suit brought by the Cambria Company issues were joined, the receivers appointed for the Belt Company filed a cross-bill against the Trust Company, denying indebtedness upon the part of the Belt Company to the Trust Company, but claiming that the Trust Company was in fact a debtor of the Belt Company. The case was, in November, 1900, referred to Hon. Shannon C. Douglass, as special master, to take the testimony, etc. The hearing proceeded before the master, and after much testimony had been taken an order was made by the court in February, 1905, pursuant to a stipulation of parties, admitting the Southern Company as a party and giving it leave to file a petition of intervention, and the Southern Company filed its petition of intervention on the 27th day of that month, claiming that the various

securities held by the Trust Company to secure its indebtedness against the Belt Company were covered by the mortgage which was foreclosed against the Belt Company, and sought to recover such property by its bill of intervention.

"The hearing before the master extended over several years, upwards of 34,000 pages of testimony was taken, and the master, on the 21st of May, 1910, filed his report, which comprises 381 pages of the printed record. The evidence has not been brought to this court; hence all questions of fact as found by the master are conclusive upon the parties on this appeal.

"The master found that the evidence did not support the claim of the Cambria Company and recommended that its bill be dismissed for want of equity. The master found upon the accounting that there was due from the Belt Company to the Trust Company the sum of $639,658.86.·

"The master found fully the facts as to the reorganization plan [referred to in the preceding pages of the opinion], the acquiring by the Southern Company of the stock and bonds of the Gulf Company, Dock Company, and Belt Company, the issuing of its new stock and bonds to the holders of the bonds and stock of those companies, in exchange for the bonds and stock of the respective companies held by them. * * *

"The master found, as a matter of law, that the Southern Company was not liable for the debts of the Belt Company.

"The Trust Company filed exceptions to the report of the master, among other things to the finding that the Southern Company was not liable for the floating indebtedness of the Belt Company, giving as reasons therefor that that was not an issue in the case, and no finding thereon should have been made by the master. * * *

"Subsequently, a hearing was had by the court upon the report of the master and the exceptions thereto, the exceptions were overruled, and the report of the special master was in all things approved and confirmed, and a decree entered in accordance with the findings and recommendations of the master, from which the Trust Company and the Central Improvement Company have prosecuted their appeal. * * *

"The assignments of error relied upon in this court are: (1) That the court erred in including in said decree the finding that the Southern Company did not assume or agree to pay or become liable for the indebtedness owing by the Belt Company to the Trust Company," etc.

The case was submitted in behalf of the appellant Guardian Trust Company upon the assignment of error above quoted.

On the 16th day of June following, claimant through associate counsel presented to the Circuit Court of Appeals the first of the two intervening petitions above mentioned and asked leave to file the same. In the petition the attention of the court was called to the finding in the decree of the lower court that the Southern Company was not liable for the debts of the Belt Company, and the suggestion was made that this finding was not supported by the facts found by the master appearing in the record. It was also called to the attention of the court that in the briefs filed by the Trust Company the only question argued was the right of the lower court to make a finding in respect to the liability of the Southern Company for the indebtedness of the Belt Company to the Trust Company, and the suggestion was made, if the court should hold that the lower court had the right to make a finding in respect to the liability of the Southern Company for this indebtedness of the Belt Company, it would follow, if the merits of the ruling of the trial court were not gone into, the Trust Company would lose its right to a decree against the Southern Company for the amount due from the Belt Company.

On the return day counsel for the Trust Company joined hands with counsel for the Southern Company in opposing the application of the

stockholders to intervene and present the issue raised by them in their petition. Among other things, he said:

"The law covering that application is in our judgment quite fully and ably presented by the counsel opposed to us. We are, counsel on both sides of this case, of the opinion that the petition of these stockholders should not be granted. Both sides are desirous of the speedy determination of the case; both sides are desirous of the judgment of the court on the issue of the case.

"We believe, for the reasons already stated, that the application is not proper. It comes untimely and from persons not entitled to be heard by this court. * * * We desire to say further in respect to our personal conduct in this litigation, that not only did we prepare the case, but as to policy to be adopted and the manner of presentation to this court, and the subject-matter of this appeal, but the matter was taken up before the appeal was taken with the members of the executive committee of the Guardian Trust Company, and the whole matter laid before them. The policy of this appeal recommended by us was formally and expressly adopted by resolution of the executive committee. Furthermore, as soon as the filing of this petition, reflecting at least upon the intelligence and by implication upon the integrity of counsel and members of the executive committee of the Guardian Trust Company, the matter has been laid before the majority of the executive committee, those of the committee who reside in Kansas City, and the policy pursued by counsel in taking this appeal has met with the approval of the members who could be reached. * * *

"Now the essence of the application is such that we feel constrained to go a bit out of the record. It will not be denied, I presume, that the whole petition, the whole construction of this petition, is that of former counsel for the Trust Company (claimant). * * * The former counsel for the Guardian Trust Company is now suing the Trust Company for services rendered in this case. The notice which he gave to counsel representing the Trust Company of the danger which he conceives in this matter was given under oath during his cross-examination in this case. * * *

"We refrained from saying on argument what we now say, that the case had assumed the form whereby in the national court it was impossible for the Guardian Trust Company to recover any substantial sum, or any substantial benefit in any way. * * * Mr. Mecartney brought the Kansas City Southern into this case by stipulation. * * * He filed the answer * * * which has raised all of this trouble. He never asked for any relief against that company, and had it fixed in such form that if the decision of the national court was [not] in favor of the Guardian Trust Company it could receive not one dollar from the Kansas City Southern, but if it was against the Guardian Trust Company it might * * * be res adjudicata. * * *

"(Of) the stockholders who come in here now as petitioners one is not a stockholder of record and the other two have been clients of Mr. Mecartney's for many years, and their legal policy is entirely shaped by him. They are no longer officers of the company, and there seems to be a desire upon his part to hamper the present counsel and to show them how much more law he knows than they do. That we believe to be the dominating motive and the real subject-matter of this petition which is made here."

The determined opposition of counsel for the Trust Company to granting the application of the stockholders to intervene and present the issue raised by them continued until Judge Sanborn, in the course of the proceeding, made the following frank statement:

"We think perhaps it is wise to say to you gentlemen that we have considered the arguments made on the former hearing, and have examined the authorities and reached a unanimous conclusion upon the question as to whether or not that finding and decision of the master that there was no liability of the Southern Company is properly in the decree. That is the main proposition upon which Messrs. Gates and English rely. The opinion is not written, and is subject to review again when the opinion comes up; but we think it

is proper to state to you that in consideration of this that after a consultation, and having examined the authorities, we (have) come to the conclusion, a tentative conclusion, which we do not hold ourselves (bound) by, that that question was properly submitted by the master, and his decision properly inserted in the decree. We think it our duty * * * to say this to you now, because it may make some difference in your arguments and presentation of this question, and, if we withheld it from you, it may be that we would deprive you of some opportunities that you may desire to take advantage of."

After this statement by the court, counsel for the Trust Company receded from his previous position and asked leave to present a brief upon the question of the liability of the Southern Company for the indebtedness of the Belt Company to the Trust Company. The stockholders were permitted to intervene and file their petition and brief. Later the claimant suggested to counsel for the Trust Company the propriety of moving for a final judgment against the Southern Company for the amount due it in case the court should hold the Southern Company liable for the indebtedness due from the Belt Company to the Trust Company. Counsel for the Trust Company, however, ignored the suggestion. Thereafter claimant in behalf of the three stockholders above named prepared and was permitted to file the second intervening petition, in which it was suggested that, in case the court should hold the Southern Company liable for the debt of the Belt Company, a final judgment for the amount due should be given in said cause in favor of the Trust Company against the Southern Company.

On October 22, 1912, this court handed down the opinion reported in 201 Fed. 811, 120 C. C. A. 121, in which it upheld all of the contentions made by claimant in the first petition. In respect to the second petition above referred to, the court said:

"Three of the stockholders of the Trust Company, at whose instance the question of the liability of the Southern Company was pressed to a decision in this court by the Trust Company and its counsel, have filed a petition for leave to present the suggestion that, in case this court finds, as it has found, that the Southern Company owes this debt, a decree should be rendered against it in this suit to the effect that the Trust Company recover this amount from the Southern Company and have execution therefor. * * * The three stockholders are accordingly permitted to file their suggestion, and leave is granted to the Trust Company, the Southern Company, and to any other party to this suit, to make such motions and present such arguments and authorities, either orally or in writing, to this court at St. Louis on January 10, 1913, regarding this suggestion, as to them shall seem meet. The issue presented by this suggestion is reserved for later consideration."

On December 2, 1913, the court filed its final opinion in said cause, reported in 210 Fed. 696, 127 C. C. A. 184, reversing the decree of the court below and directing that judgment be entered against the Southern Company and in favor of the Trust Company for the indebtedness due the Trust Company from the Belt Company, as suggested in the second intervening petition.

The contentions of claimant in behalf of the three stockholders of the Trust Company were sustained in every particular in the two opinions of the court above referred to.

It is apparent from the remarks of counsel for the Trust Company above quoted that the opposition of counsel and of the officers of the Trust Company in charge of the litigation to the application of the

stockholders to intervene and present the issue raised in their petition was due to ill will towards claimant and prejudice against any suggestion which he might make. It is not necessary to go far to find the cause. Counsel stated it in his remarks above quoted when he said:

"The former counsel for the Guardian Trust Company (claimant) is now suing the Trust Company for services rendered in this case. The notice which he gave to counsel representing the Trust Company of the danger which he conceives in this matter was given under oath during his cross-examination in this case. * * * We refrained from saying on argument what we now say, that the case had assumed the form whereby in the national court it was impossible for the Guardian Trust Company to recover any substantial sum, or any substantial benefit in any way. * * * Mr. Mecartney brought the Kansas City Southern into this case by stipulation. * * * He filed the answer * * * which has raised all of this trouble. He never asked for any relief against that company, and had it fixed in such form that if the decision of the national court was [not] in favor of the Guardian Trust Company it could receive not one dollar from the Kansas City Southern, but if it was against the Guardian Trust Company it might * * * be res adjudicata. * * * There seems to be a desire upon his part to hamper the present counsel and to show them how much more law he knows than they do. That we believe to be the dominating motive and the real subject-matter of this petition which is made here."

The outcome of the lawsuit of claimant against the Trust Company mentioned in the above quotation is reported in 274 Mo. 224, 202 S. W. 1135.

The opinion of the judge who tried the cause is made a part of the record in the case before us.

As tending to explain the attitude of counsel and the officers of the Trust Company towards claimant and towards any suggestion made by him, we quote the following from the opinion of the trial court:

"Not content with depriving the plaintiff of a justly earned reward for his services and with putting him to a lawsuit for his fees, the defendant in its answer and in the course of the hearing before the referee and in this court has made an assault upon the plaintiff's professional ability and skill and even upon his personal integrity. It charges him with negligence in the conduct of its business, with being a bungling and unskillful lawyer. Not only are these charges utterly without warrant on the evidence, but on the contrary, it shows that he conducted his client's business with the highest degree of efficiency, and so far as his personal integrity is concerned, there is not a syllable in the evidence which would warrant such a charge. * * *

"In the meantime, in October, 1905, Prescott (one of the executive committee referred to in the remarks of counsel above quoted) and his associates had succeeded in obtaining voting control of the Trust Company. Prescott promptly proceeded to eliminate from the directory and management of the company those who had opposed him. He became secretary of the company and he and his friends constituted a majority of the executive committee. Although outwardly and ostensibly giving support to the plaintiff (claimant) in his representation of the Trust Company, there is much evidence that Prescott was in secret sympathy with its adversaries. His first overt step was an effort to engineer a compromise with the Southern Company of the Trust Company's claims for $200,000, and it was his plan that he, who had come into the directory as the agent and representative of the Gates interests, should act as the representative of the Trust Company in its negotiations with the Southern Company for the compromise. The impropriety of this was suggested to him by plaintiff in a personal letter, as a result of which Prescott found it expedient not to act as the negotiator. Others acted in his stead and the negotiations came to nothing. Prescott resented plaintiff's intervention in the matter and it is very plain that he harbored ill will against him.

His next step was to endeavor to displace the plaintiff as the company's attorney and he made overtures to plaintiff's assisting counsel looking to that end, but these overtures were rejected. Later, plaintiff discovered that Prescott without plaintiff's knowledge had caused certain orders to be made by the federal court whereby valuable lands, the title of which was involved in the litigation, were transferred to the Southern Company without adequate consideration to the Trust Company. These lands were owned by the Central Improvement Company, which was a party to the litigation, and of whose outstanding and total stock the Trust Company held substantially all, said stock having been pledged with it as collateral security for the debt of the Belt Company. The transfer of these lands greatly impaired the value of the collateral security held by the Trust Company. Plaintiff (had) been put by the defendant in complete charge of its said litigation so far as it concerned said lands and these conveyances thus made without the knowledge or consent of the plaintiff greatly embarrassed the plaintiff in his representation of the Trust Company. He accordingly called upon Prescott for some explanation of these conveyances and while he was pressing his inquiries, Prescott, on March 25, 1908, called together the executive committee, which passed a resolution dispensing with plaintiff's further services. It is suggested by the referee's report and is contended by the defendant that the reason for plaintiff's discharge was because defendant had lost confidence in plaintiff's ability and judgment, and because of alleged unfounded attacks of the plaintiff upon the judge or judges of the court in which its litigation was pending and because the officers of the Trust Company feared that they would be punished for contempt of court. In my opinion these are mere disingenuous pretexts for the plaintiff's discharge and Prescott and his friends on the committee had quite a different motive in dispensing with the plaintiff's services. * * *

"The Trust Company in taking its appeal (decided in 201 and 210 Federal, supra) and in assigning error did not complain that the court below had erred in exempting the Southern Company from liability, but claimed that such liability was not in issue and should not have been decided one way or the other. With the Trust Company's appeal in this posture and while the plaintiff in this suit was on the witness stand testifying in his own behalf, and was under cross-examination, he was severely cross-examined and criticized by defendant (through counsel making the remarks above quoted) for having allowed, through his framing of the issue, the case to get into such posture as to have brought about the adverse ruling touching the liability of the Southern Company, and throughout this case in the examination of witnesses and in the arguments of counsel the plaintiff has been charged with having mismanaged the case and with being responsible for the adverse finding of the special master and of the United States Circuit Court. It was charged against the plaintiff that he had bungled the pleadings, that he had made a colossal error in bringing the Southern Company into the litigation, that he had erred in failing to file a cross-bill against the Southern Company after it was in the litigation, and the like. In his testimony the plaintiff defended himself, and to my mind, successfully and unanswerably against these charges."

Upon the record, the salient features of which we have set out in the foregoing quotations, we think the case well within the rule permitting the stockholders of a corporation to bring suit or intervene for the protection of the rights of the corporation where through breach of duty the officers of the corporation have failed to protect its rights. Farmers' Loan & Trust Co. v. Toledo, etc., Co. (C. C.) 67 Fed. 53; General Electric Co. v. West Asheville Imp. Co. (C. C.) 73 Fed. 386; Dodge v. Woolsey, 18 How. 345, 15 L. Ed. 401; Del. & Hud. Co. v. Albany & Susquehanna, 213 U. S. 435, 29 Sup. Ct. 540, 53 L. Ed. 862.

We also think the case within the rule permitting the allowance of reasonable attorney's fees from funds recovered for the corporation. McCourt v. Singers-Bigger, 145 Fed. 103, 76 C. C. A. 73, 7 Ann. Cas.

287; Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157; Central Railroad v. Pettus, 113 U. S. 116, 5 Sup. Ct. 387, 28 L. Ed. 915.

The failure of the officers and attorneys of the Trust Company to present the issue raised by claimant after their attention had been called to it was not a simple error of judgment but was so palpably the result of prejudice against claimant and a desire to depreciate him and the value of his services while counsel for the Trust Company that in our judgment it amounted to a breach of duty.

It is highly probable that the Southern Company would have escaped liability altogether if the issue had not been raised by claimant in behalf of the intervening stockholders at the time and in the manner it was raised.

After the decision of the case by the Circuit Court of Appeals, the Southern Company appealed to the Supreme Court of the United States. Claimant in the name of his clients was permitted to appear in that court, make an oral argument, and file a brief in behalf of the Trust Company. The opinion of the Supreme Court affirming the judgment of the Circuit Court of Appeals is reported in 240 U. S. 166, 36 Sup. Ct. 334, 60 L. Ed. 579.

The Southern Company in satisfaction of the claim against it paid the Trust Company in round numbers $900,000. The value of the securities held by the Trust Company was about $200,000. The direct result of the successful termination of the litigation was the recovery of about $700,000 which in all probability would, except for the intervention of the stockholders represented by claimant, have been lost. Indirectly, the successful termination of the litigation made it possible for the Trust Company to collect an additional $75,000 on obligations held by it for which the Southern Company was liable.

Eminent lawyers testified in the case in behalf of claimant and expressed opinions as to the value of the services rendered by him in the Circuit Court of Appeals and in the Supreme Court of the United States. Their estimates ranged from $75,000 to $200,000.

The services rendered in the Supreme Court do not fall within the rule which permits an allowance of fees for services rendered in behalf of a corporation at the instance of a stockholder. Claimant had fully accomplished his purpose when he intervened and presented the issues in the Circuit Court of Appeals upon which the case was won. The Trust Company employed additional and eminent counsel who appeared for it in the Supreme Court and who by brief and oral argument sought to sustain the decisions of the Circuit Court of Appeals. We are unable to see how it can be fairly claimed that the services of claimant in the Supreme Court were necessary or of any benefit to the Trust Company.

The fee allowed claimant should not be estimated upon a contingent basis. Graham v. Dubuque Specialty Mach. Works, 138 Iowa, 456, 114 N. W. 619, 15 L. R. A. (N. S.) 729.

On the other hand, the amount recovered by claimant in his suit against the Trust Company, reported in 274 Mo., supra, should not be taken into consideration in determining the amount to be allowed him in this suit. Both the trial court and the Supreme Court in that

case say that claimant earned prior to his discharge in March, 1908, all that he was allowed in the case.

When we remember the state of the case in the Circuit Court of Appeals and the circumstances under which claimant forced the issues raised by him upon the attention of the court in the face of the opposition of counsel for the Trust Company, we think the learned court below fell into error when it found that $15,000 was the reasonable value of the services rendered by claimant in behalf of the Trust Company, and the fact that additional counsel was employed by the Trust Company in the Circuit Court of Appeals after claimant had pressed upon the attention of the court the vital issue in the case does not in our judgment affect the value of the services rendered by him.

Special counsel who was employed by the Trust Company to present the case in the Supreme Court of the United States and whose only duty it was to maintain the correctness of the decisions of the Circuit Court of Appeals, was paid the sum of $16,000.

While we are persuaded that the sum allowed claimant by the learned court below is inadequate compensation for the service rendered by him in behalf of the Trust Company, it has been a somewhat difficult matter to arrive at and agree upon a sum which is alike fair and just to the estate of the Trust Company and to those beneficially interested in its assets, and to claimant. Since the fee of claimant should not be estimated upon a contingent basis, and since nothing can be allowed for his service in the Supreme Court of the United States, it is apparent that the estimates of the expert witnesses testifying in the case afford little aid in arriving at a conclusion. The situation, at the time the services were rendered in the Circuit Court of Appeals, was critical; the circumstances, exceptional—requiring decision, courage and persistence.

After a careful consideration of the case, we have reached the conclusion that claimant should be allowed the sum of $22,500 in addition to the sum allowed him by the District Court, that is, the sum of $37,500. Although this sum is only one-half of the lowest estimate of any of the witnesses called by claimant, it is about 5 per cent. of the amount recovered by the Trust Company as the result of the claimant's efforts, and under the circumstances of the case we believe it to be a reasonable fee to be paid claimant from said amount.

The judgment of the court below is modified by the allowance of the said sum of $37,500, with legal interest thereon from the date of the filing of the claim, and the judgment as thus modified is affirmed.

HOOK, Circuit Judge, participated in the hearing of this cause but died before a conclusion was reached and the opinion prepared.