*ᴬᵘ 3/ᵈⁱ,⁰) 7ₒ ᵈ (ᶜ ᶜ ᶜ ᵧ (ᵉ,ᵍ ᵛ 9)*

## PUTNAM v. SLAYBACK et al.

Circuit Court of Appeals, Fourth Circuit.
January 10, 1928.

No. 2664.

**1. Corporations ⬧⇒629—On liquidation of corporation organized in New Jersey and transferred to West Virginia, holders of preferred stock held entitled to funds, to exclusion of holders of common stock (Code W. Va. c. 53, § 16; General Corporation Act N. J. 1875, § 80, as amended by Laws 1877, p. 74, § 1; Laws N. J. 1896, p. 283, § 18).**

On liquidation of corporation organized in New Jersey and later transferred to West Virginia, holders of first preferred, and second preferred stock *held* entitled to share equally in distribution of funds to exclusion of holders of common stock, under Code W. Va. c. 53, § 16, and General Corporation Act N. J. 1875, § 80, as amended by Laws 1877, p. 74, § 1, where first transfer of stock was made before enactment of Laws N. J. 1896, p. 283, § 18.

**2. Corporations ⬧⇒629—On liquidation of corporation organized in New Jersey and transferred to West Virginia, circumstances surrounding issuance of stock and reorganization may be considered in determining stockholders' rights.**

In determining rights of stockholders on liquidation of corporation organized in New Jersey and transferred to West Virginia, circumstances surrounding parties when preferred stock was issued, previous status of preferred stockholders in predecessor company, and plan and agreement of reorganization may all be considered.

**3. Corporations ⬧⇒629—Where corporation was transferred from one state to another, original holders of stock in latter state are bound by conditions of transfer, and purchasers from them are put on notice.**

Where corporation organized in New Jersey was transferred to West Virginia and char-

ter issued in latter state, original holders of various classes of stock in West Virginia corporation are bound by terms and conditions of transfer, and any purchaser from original holders is put on notice as to conditions under which stock purchased was issued.

**4. Corporations ⊂⊃181(1)—Any stockholder may examine corporation's books.**

Any stockholder of corporation is entitled to make examination of books of such corporation.

**5. Corporations ⊂⊃629—That corporation was not wound up under court's direction held not to alter rights of parties, nor change method of distribution.**

That corporation was wound up by officers, and not under direction of court, does not alter rights of parties, nor change method of distribution.

Appeal from the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

Suit by Henry B. Slayback and another, executors of the estate of John D. Slayback, deceased, against the Carbon Steel Company, in which Samuel H. Putnam and others intervened. From a decree for complainants, the named intervener appeals. Affirmed.

Henry King Siebeneck, of Pittsburgh, Pa. (J. D. Bell, of Pittsburgh, Pa., on the brief), for appellant.

Thomas B. Jackson, of Charleston, W. Va., and Arthur B. Van Buskirk and H. V. Blaxter, both of Pittsburgh, Pa. (Lon H. Kelly, of Charleston, W. Va., Blaxter & O'Neil and Alexander C. Tener, all of Pittsburgh, Pa., Brown, Jackson & Knight, of Charleston, W. Va., and Charles F. Patterson, William M. Robinson, and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., on the brief), for appellees.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge. This is an appeal from the final decree entered in the District Court of the United States for the Southern District of West Virginia, in a cause in equity, in which Henry B. Slayback and Charles Olney, executors, were complainants, and the Carbon Steel Company, a West Virginia corporation, was defendant. There were a number of interveners, among them Samuel H. Putnam, appellant. The Carbon Steel Company was originally a New Jersey corporation, incorporated July 28, 1892. On October 12, 1894, the corporation was transferred from New Jersey to West Virginia, and a charter issued to it in the latter state. Three classes of stock were issued by the company, and in the amounts following: 5,000 shares of first preferred stock, entitled to a noncumulative dividend of 8 per cent. per annum; 15,000 shares of second preferred stock, entitled to a noncumulative dividend of 6 per cent. per annum; 30,000 shares of common stock. Nothing was stated in any of the certificates of stock of either class as to priority in the distribution of capital assets.

On August 7, 1894, a resolution was passed by the stockholders of the New Jersey corporation, authorizing the conveyance of its property to the West Virginia corporation, but stipulating that "the preferred stock to be issued under the same conditions as now exist as to the said stock of the present company." On October 22, 1894, the directors of the New Jersey corporation, acting pursuant to the resolution of the stockholders, transferred all the property of the New Jersey corporation to the West Virginia corporation in exchange for the latter's stock, and the stockholders of the West Virginia corporation accepted the transfer upon the terms set forth in the resolutions of the New Jersey corporation. The resolution of the West Virginia stockholders further provides "that it was the intention of the stockholders of both companies that the preferred stock of the West Virginia corporation should have the same priorities as had attached to the preferred stock of the New Jersey corporation."

The transfer was duly carried out and the corporation continued in business, under the West Virginia charter, until the year 1922, when it ceased the transaction of the manufacturing business, and on January 23, 1923, the stockholders of the West Virginia corporation authorized the liquidation of the company's capital assets and duly appointed a liquidating committee, composed of its board of directors. On October 20, 1925, the board of directors passed a resolution stating that the company had ceased to do business, had disposed of practically all of its assets, and directing that the money in the possession of the company, amounting to about $250,000, be distributed among all the stockholders of the company, making no distinction as to the class of the stock held. Complainants then filed their bill in this cause, asking that the company be enjoined from distributing the money on hand equally among all the stockholders, and asking that the holders of the preferred stock be first paid in full before anything should be paid to the holders of the common stock.

The judge below entered a decree granting the relief prayed for, and directing that the holders of the preferred stock of both classes should share equally in the distribution of the funds, to the exclusion of the holders of the common stock, from which decree this appeal was taken.

[1] There can be no doubt that the stock of the West Virginia corporation was issued subject to the same terms and conditions as had theretofore attached to the stock of the New Jersey corporation. This was not only the intention, as shown by the resolution of the stockholders and directors of both companies, but was the condition upon which the stockholders and directors of the New Jersey corporation agreed to the transfer. This condition was specifically accepted by the directors of the West Virginia corporation. It is only reasonable to presume that upon no less advantageous terms would the stockholders of the New Jersey corporation have consented to the transfer. There was no consideration passed that would induce any holder of the preferred stock of the New Jersey corporation to surrender any right that he might then have had under the New Jersey law.

[2] Circumstances surrounding the parties when the preferred stock is issued, the previous status of the preferred stockholders in the predecessor company, and the plan and agreement of reorganization may all be considered in determining the rights of stockholders. St. John v. Erie Ry. Co., 22 Wall. 136, 22 L. Ed. 743; N. Y., L. E. & W. R. R. Co. v. Nickals, 119 U. S. 296, 7 S. Ct. 209, 30 L. Ed. 363.

[3,4] The original holders of the various classes of stock in the West Virginia corporation are bound by the terms and conditions of the transfer, and any purchaser from the original holder would be put upon notice as to the conditions under which the stock purchased was issued. An examination of the books of the corporation, the right to which any stockholder is entitled, would at once disclose the terms and conditions under which the stock was issued.

"One purchasing stock in a corporation, and causing a transfer thereof to be made to himself and entered upon its books, becomes substituted to his vendor, and therefore holds such stock on the same conditions and subject to the same obligations as such vendor held it on prior to the transfer." 7 R. C. L. 276, and cases there cited.

"* * * Even though the preferred certificates of stock provide only for preferred dividends without mentioning assets, it may be shown that the actual agreement was that such stock should be preferred as to assets also, and, if so, every purchaser of the preferred stock is equally bound with the original parties." Cook on Corporations, § 278.

Such action as was taken by the West Virginia corporation was authorized under the laws of West Virginia then in force. Section 16 of chapter 53 in the Code of West Virginia provided as follows:

"The stockholders in general meeting, by resolution or by-law, may provide for or authorize the issuing of preferred stock on such terms and conditions, and with * * * such * * * regulations respecting the preference to be given to such stock over the other stock in relation to future dividends, or otherwise, as [they] may deem proper. * * * *"

The question then arises as to what rights the various classes of stock had when issued by the New Jersey corporation, under the law of the state of New Jersey. The General Corporation Act of New Jersey of 1875, as amended by chapter 55 of the Laws of 1877, provided, after payment of all allowances, expenses, and costs and the satisfaction of all special and general liens upon the funds of the corporation to the extent of their lawful priority, "the creditors shall be paid proportionately to the amount of their respective debts, * * * and the surplus funds, if any, after payment of the creditors and the costs and expenses as aforesaid, and the preferred stockholders, may be divided and paid to the general stockholders proportionately, according to their respective shares."

It is contended by appellants that section 18 of the Statutes of New Jersey of 1896 (Laws 1896, p. 283) mentions insolvency as a condition precedent necessary to the priority of preferred stock over the common stock, and that in the absence of a receivership in a court proceeding all classes of this stock should participate equally in the distribution of capital assets. We do not think this was the law of New Jersey prior to 1896.

[5] In McGregor v. Home Ins. Co., 33 N. J. Eq. 181, decided in 1880, the court held that at that time in New Jersey preferred stockholders were entitled to priority over holders of common stock in the distribution of capital assets upon dissolution by the corporation itself, to the extent of the par value of the preferred stock. To hold that the fact that the corporation is being wound up by its officers and not under direction of a court would completely alter the status of the va-

rious classes of stock and would be an absurdity. The court says:

"The fact that this corporation is being wound up by its officers, and not under the direction of this court, does not alter the rights of the parties nor change the method of distribution. The primary object of the statute, so far as it affects stockholders, was to define their rights; and the rule it prescribes upon that subject must be taken as the measure of their rights, whether they are wrought out by the court or through some other instrumentality. A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter. 4 Bac. Abr. 648 (Stat. 1, § 42); Oates v. National Bank, 100 U. S. 239 [25 L. Ed. 580]."

It is contended that the opinion on this point was dictum, but a careful examination of other New Jersey decisions, including Hellman v. Penn E. V. Co., 73 N. J. Eq. 269, 67 A. 834, and Lloyd v. Penn E. V. Co., 75 N. J. Eq. 263, 72 A. 16, 21 L. R. A. (N. S.) 228, 138 Am. St. Rep. 557, 20 Ann. Cas. 119, sustains the position taken by the court in the McGregor Case.

It is admitted that under the law of New Jersey at the time of the first transfer of this stock (1894) there was no distinction between the first and second preferred stock as to distribution of assets. In his opinion in the court below the judge says:

" * * * I am of opinion that the acceptance of the property of the New Jersey corporation, by the West Virginia corporation, upon the conditions above set out, as to preferred stock, in effect created a contract with the preferred stockholders, under which they are entitled to be treated as if this were a New Jersey corporation, instead of a West Virginia corporation, and that, when the preferred stockholders exchanged their New Jersey stock, for the West Virginia, they did it upon condition that the preferred stock had the same rights in the West Virginia corporation that it had had in the New Jersey corporation. I am further of the opinion that the present holders of the common stock, whenever they may have purchased their stock, held it under the same condition as it was issued in 1894.

"I recognize the fact to be that the West Virginia certificate of incorporation and the certificates of stock on their respective faces do not show that this right belongs to the preferred stock. However, I think it was the duty of any stockholder, when he wanted to know the exact standing of his stock, to have examined the resolutions of the West

Virginia corporation, as to the issue of this preferred stock, and that he cannot claim any rights which were not therein given. Therefore I hold that the preferred stock, including the first and second issues, are entitled to receive proportionately the amount of assets remaining, after the payment of debts and the expenses belonging to the West Virginia corporation."

We think the conclusions reached by the learned trial judge were correct in every particular, and the decree is accordingly affirmed.