## CARBON STEEL CO. v. SLAYBACK et al.

Circuit Court of Appeals, Fourth Circuit.
April 9, 1929.

No. 2788.

lant, and further directing the payment of the residue of said fund ratably to all the first and second preferred stockholders.

This litigation grows out of the case of Putnam v. Slayback et al., decided on appeal by the Fourth Circuit Court of Appeals on January 10, 1928, reported 23 F.(2d) 406.

The original suit was instituted by Henry B. Slayback and Charles Olney, executors, against Carbon Steel Company, a West Virginia corporation. There were a number of interveners therein, among them Samuel H. Putnam, appellant therein. As shown by the very able opinion in the original case:

"The Carbon Steel Company was originally a New Jersey corporation, incorporated July 28, 1892. On October 12, 1894, the corporation was transferred from New Jersey to West Virginia, and a charter issued to it in the latter state. Three classes of stock were issued by the company, and in the amounts following: 5000 shares of first preferred stock, entitled to a noncumulative dividend of eight per cent. per annum; 15,000 shares of second preferred stock, entitled to a noncumulative dividend of six per cent. per annum; 30,000 shares of common stock. Nothing was stated in any of the certificates of stock of either class as to priority in the distribution of capital assets.

"On August 7, 1894, a resolution was passed by the stockholders of the New Jersey corporation, authorizing the conveyance of its property to the West Virginia corporation, but stipulating that 'the preferred stock to be issued under the same conditions as now exist as to the said stock of the present company.'

"On October 22, 1894, the directors of the New Jersey corporation, acting pursuant to the resolution of the stockholders, transferred all the property of the New Jersey corporation to the West Virginia corporation in exchange for the latter's stock, and the stockholders of the West Virginia corporation accepted the transfer upon the terms set forth in the resolutions of the New Jersey corporation.

"The resolution of the West Virginia stockholders further provides 'that it was the intention of the stockholders of both companies that the preferred stock of the West Virginia corporation should have the same priorities as had attached to the preferred stock of the New Jersey corporation.' The transfer was duly carried out and the corporation continued in business, under the West Virginia charter, until the year 1922, when it ceased the transaction of the manu-

E. M. Everly, of Morgantown, W. Va., for appellant.

Thomas B. Jackson, of Charleston (H. V. Blaxter, Blaxter & O'Neill, and Alexander C. Tener, all of Pittsburgh, Pa., and Brown, Jackson & Knight, of Charleston, W. Va., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and BAKER, District Judge.

BAKER, District Judge. This is an appeal from an order entered in the Southern District of West Virginia on the 12th day of July, 1928, allowing Alexander C. Tener, H. V. Blaxter, and Brown, Jackson & Knight the sum of $12,000 attorney fees and costs as a first lien upon the capital assets now in the hands of Carbon Steel Company, appel-

facturing business, and on January 23, 1923, the stockholders of the West Virginia corporation authorized the liquidation of the company's capital assets and duly appointed a liquidating committee, composed of its board of directors.

"On October 20, 1925, the board of directors passed a resolution stating that the company had ceased to do business, had disposed of practically all of its assets, and directing that the money in the possession of the company, amounting to about $250,-000, be distributed among all the stockholders of the company, *making no distinction as to the class of the stock held.*

"Complainants then filed their bill in this cause, asking that the company be enjoined from distributing the money on hand equally among all the stockholders, and asking that the holders of the preferred stock be first paid in full before anything should be paid to the holders of the common stock. The judge below entered a decree granting the relief prayed for, and directing that the holders of the preferred stock of both classes should share equally in the distribution of the funds, to the exclusion of the holders of the common stock, from which decree this appeal was taken."

In passing upon that appeal, this court held as follows: "We think the conclusions reached by the learned trial judge were correct in every particular, and the decree is accordingly affirmed."

Instead of $250,000, as stated in the original opinion, the assets available for distribution to the stockholders amount to $321,-000, cash in bank, which sum may possibly be increased.

The first preferred stockholders abandoned, upon appeal, their position that they were entitled to priority over the second preferred stockholders. The effect of the decision in Putnam v. Slayback (C. C. A.) 23 F.(2d) 406, is to award to the first and second preferred stock an additional 60 per cent. of the fund—that is, the effect of that decision is to divest the common stock of participation in this fund until the first and second preferred stock has been paid, and the common stock represents 60 per cent. of the total outstanding stock issued in shares; so that the sum of more than $193,000 is awarded to the first and second preferred stockholders as a result of that litigation. The assets in hand at present, or to come in hand for distribution, are not sufficient to pay the total preferred stock, and there will be nothing for the common stockholders. To

put it in another way, the effect of that decision was to give to the first and second preferred classes of stock 60 per cent. of the total assets that they would not have participated in but for that decision.

Upon final hearing in this cause upon the petitions of Henry B. Slayback and Charles Olney, executors of the estate of John D. Slayback, deceased, the plaintiffs, to have an allowance made from the funds otherwise payable to first and second preferred stockholders of the Carbon Steel Company as compensation to the attorneys employed by the plaintiffs, upon the answers to said petitions, and upon the questions involved in said petitions and answers, the plaintiffs tendered in open court certain witnesses whose testimony was taken, transcribed, and filed, and the defendant presented the depositions of certain witnesses which were ordered filed, and submitted the matter to the District Court.

Upon due consideration whereof the learned District Judge—who had heard the original case, was thoroughly familiar with every phase thereof, and who heard and saw the witnesses testify in this case—found as a matter of fact that "said petitioners, the plaintiffs in this case, have in good faith maintained the necessary litigation to save to the preferred stockholders of said defendant corporation sixty per cent, of the capital assets from illegal and wrongful distribution and have brought the same under the control of this court and secured the application and payment thereof to said first and second preferred stockholders; that said petitioners have virtually borne the whole burden of the successful litigation of this suit and have been at great expense and trouble in prosecuting the same; that said petitioners have *necessarily* secured the services of H. V. Blaxter and Alexander C. Tener, attorneys of Pittsburgh, Pennsylvania, and the law firm of Brown, Jackson and Knight of Charleston, West Virginia, as counsel, instituting and prosecuting this suit in this court and in the Circuit Court of Appeals for the Fourth Circuit, and that the result of their services has been beneficial to the first and second preferred stockholders to the extent of approximately $190,000; and the court being of opinion that $12,000 is a fair allowance and fair compensation to the attorneys aforesaid in payment for their services and expenses incurred by them in and about the prosecution of this litigation, and as part of plaintiffs' costs, it is, therefore, adjudged, ordered and decreed that out of the capital

assets of the Carbon Steel Company the said Carbon Steel Company is directed to pay Alexander C. Tener, H. V. Blaxter, and Brown, Jackson and Knight, the sum of $12,000."

The said $12,000 attorneys' fees and the costs of this suit were adjudged to be a first lien upon all the capital assets in the hands of said corporation and that no funds be paid out for any other purpose until said costs and attorneys' fees had been paid; further decreeing that, after the payment of said costs and attorneys' fees, the Carbon Steel Company should pay to the first and second preferred stockholders the residue of said capital assets ratably.

It is conceded by all parties that the sum of $12,000 allowed attorneys for appellees by the District Court is a fair and reasonable amount for the services performed.

The issue involved in this appeal is whether or not the appellees have a right to be allowed counsel fees out of the undistributed capital assets of the appellant as directed by the order of the District Court.

The board of directors of Carbon Steel Company, by resolution adopted December 5, 1925, after having been advised of the bringing of the suit by Slayback and Olney, executors of John D. Slayback v. Carbon Steel Company, authorized the employment of three attorneys *to be selected by themselves* to settle the rights of all classes of stock; and resolved further "that if said attorneys should differ among themselves as to the rights of the various classes of stockholders, that said attorneys shall prepare and file proper legal proceedings to determine the rights of the various classes of stockholders of this company."

A very questionable procedure for one who merely holds the funds as a liquidating trustee! Such action opens wide the door for fraud!

█ The learned District Judge found as a question of fact that Slayback and Olney, executors of John Slayback, deceased, had brought the $321,000, available assets of Carbon Steel Company, into the custody and under the control of the District Court by maintaining the necessary litigation, thereby saving to the preferred stockholders 60 per cent. of the capital assets from illegal and wrongful distribution and secured the application and payment thereof to the first and second preferred stockholders; and that they had virtually borne the whole burden of the successful litigation.

Such finding of fact in equity will not be disturbed on appeal unless contrary to the plain preponderance of evidence. Big Run Coal Co. v. Matthew Addy Co., 290 F. 781 (6 C. C. A.); Davis et al. v. Davis Trust Co., (W. Va.) 145 S. E. 588; Swope et al. v. Wade et al. (W. Va.) 145 S. E. 384.

A careful examination of the record does not indicate to us that the finding of the District Court, who is familiar with all the litigation relative to the questions in issue and who heard and saw the witnesses testify, is other than in accord with the circumstances and the weight of the testimony.

█ An allowance out of a fund of a fee for a solicitor by whose exertions the fund was recovered is within the judicial discretion of the court, and in fixing that fee the court can proceed upon its own knowledge of the value of the solicitor's services. Harrison v. Perea, 168 U. S. 311, 18 S. Ct. 129, 42 L. Ed. 478.

█ We accept that conclusion unless the evidence decidedly preponderates against it. Pugh v. Snodgrass, 209 F. 325 (6 C. C. A.).

█ Where the services of complainant's solicitors resulted in rescuing a large amount of property, not only for the benefit of the complainant, but for the benefit of all the stockholders of a class, and by means of these services the property is brought under the control of the court, nothing is plainer than that the cost of a restitution of this kind should be borne by those benefited by it and allowance may be made directly to the attorneys themselves. Trustees of Internal Improv. Fund v. Greenough, 105 U. S. 527, 26 L. Ed. 1157; Central Railroad & Banking Co. v. Pettus, 113 U. S. 116, 5 S. Ct. 387, 28 L. Ed. 915; Colley v. Wolcott (C. C. A.) 187 F. 595; Buell v. Kanawha Lumber Corp. (D. C.) 201 F. 762, 769; Muskegon Boiler Works v. Tenn. Ry. Co. (D. C.) 274 F. 836; Weigand v. Alliance Supply Co., 44 W. Va. 133, 28 S. E. 803.

We conclude the findings and conclusions of the learned trial judge were correct in every particular, and the order of July 12, 1928, appealed from, is accordingly affirmed.

Affirmed.