**AMERICAN S. S. CO. v. WICKWIRE
SPENCER STEEL CO.**

No. 1208F.

District Court, W. D. New York.

May 28, 1935.

942

**KNIGHT, District Judge.**

This is an application for allowance for services and disbursements in the receivership proceedings herein. Such receivership proceedings have been pending since October 21, 1927. They have involved the expenditure of many millions of dollars, and the performance of an extremely large amount of work. Claims for services and disbursements aggregating upwards of $500,000, including those in ancillary receiverships, have been presented for allowance. The receivers and their attorneys have had allowances for certain services and expenses, and various other of the claimants have also been made certain payments.

I find and make the following as and for allowances to the following named individuals:

| | |
|---|---|
| Brown, Ely & Richards, solicitors for plaintiff............ | $ 1,500.00 |
| Botsford, Mitchell, Albro & Weber, solicitors for defendant ..................... | 1,500.00 |
| Davis, Polk, Wardwell, Gardiner & Reed, solicitors for Guaranty Trust Co. of N. Y., as trustee ................. | 18,500.00 |
| Palmer, Dodge, Barstow, Wilkins & Davis, solicitors in the Dist. of Mass. ............. | 500.00 |
| Moot, Sprague, Brownell, Marcy, Carr & Gulick, solicitors in the W. D. of N. Y. for Guaranty Trust Co. of N. Y. | 1,500.00 |
| Locke, Babcock, Hollister & Brown, solicitors in W. D. of N. Y. for Chase National Bank, as trustee............ | 1,250.00 |
| Kenefick, Cooke, Mitchell, Bass & Letchworth, solicitors for B. Noteholders' Committee... | 10,000.00 |
| Choate, Hall & Stewart, solicitors in D. of Mass. for Chase National Bank, as trustee.... | 500.00 |
| Joseph & Zeamans, solicitors for a Committee of Holders of Common Stock Voting Trust Certificates ................ | no allowance |
| Mudge, Stern, Williams & Tucker, solicitors for Chase National Bank, as trustee.... | 18,500.00 |
| Larkin, Rathbone & Perry, solicitors for Reorganization Committee ................ | 20,000.00 |
| Henry E. Kelley, special tax counsel ................... | 5,000.00 |
| Edward C. Bowers, receiver ... | 52,500.00 |
| Charles L. Feldman, receiver.. | 10,500.00 |
| Dudley, Stowe & Sawyer, solicitors for receivers........ | 4,000.00 |

Guaranty Trust Co. of N. Y., trustee

| | |
|---|---|
| Services | 5,000.00 |
| Disbursements | 4,961.66 |
| | **9,961.66** |

Chase National Bank of N. Y., trustee

| | |
|---|---|
| Services | 5,000.00 |
| Disbursements | 4,698.45 |
| | **9,698.45** |

| | |
|---|---|
| Davies, Auerbach & Cornell, as attorneys for Irving Trust Co., trustee ................ | No allowance |
| First National Bank of Boston, Stockholders' Committee...... | No allowance |

Some explanation should be made of the basis on which certain of these allowances are made and the reason why certain applications for allowances are denied.

 This Western District of New York was the district of primary jurisdiction. The receivers Bowers and Feldman were ancillary receivers in other districts. Mr. Bowers was ancillary receiver in ten other districts of the United States District Court, including New York, Massachusetts, California, Illinois, Kansas, Oklahoma, and Texas. Mr. Feldman was receiver in each of such districts except in the Northern District of Illinois, Eastern Division. The allowances to the receivers herein are made to them in full for all of their services in the primary and ancillary receiverships. The largest burden of the work of this corporation has fallen upon the receiver Bowers. When originally named he was allowed $25,000 per year for services. Shortly subsequent that amount was in-

creased to $30,000. He has been paid at the rate of $30,000 per year since that time. He now asks for an allowance of $138,000, which is based upon an annual compensation of $50,000. Mr. Bowers has worked large economies in certain respects in the administration of the estate. His ability to command a large salary is beyond dispute. However, he has already had more in pay for his services than he was receiving as president of the company prior to receivership. The bondholders' protective committee representing in interest the major portion of the value of the estate have recommended an allowance to Mr. Bowers of $70,000. This recommendation is entitled to consideration, but it cannot outweigh the obligation of the court to fix an allowance which it believes fair and reasonable.

The allowance to receiver Feldman is on the basis of $1,500 a year for a period of seven years.

I incline to the opinion that, when the annual allowances were made to these receivers by Judge Hazel, it was intended that they would cover all the services to be performed in the primary district. Additional services were performed by Messrs. Bowers and Feldman as ancillary receivers for which they are entitled to compensation, and it is particularly with this in view that any extra allowances are made.

Substantial reductions have been made in the amounts asked for by the trustees of the several mortgages. Services were required by reason of the litigation arising out of the foreclosure actions, but the allowances heretofore made coupled with those now fixed seem to the court fair. Interest charges are disallowed for the reason that, as I understand, these trustees for a considerable time had on deposit substantial amounts belonging to the estate for which no interest was allowed. These interest charges have been amply and fully met by the benefits received.

Solicitors represented B noteholders' committee. This service resulted in substantial benefit to the B noteholders. At the time the status of the noteholders was adjusted these attorneys were paid $25,000. As I am advised, the reorganization committee then stated it would not oppose an additional allowance of $25,000 upon the closing of the receivership. Of course, the court is not bound by the understanding. The court must look simply to the question of the reasonableness of the charge. Comparable with other charges in the case, it seems to it that an allowance of $10,000 is ample.

The applications for allowances to Davies, Auerbach & Cornell and the First National Bank of Boston are disallowed. It appears that the services performed were rendered in connection with the reorganization proceedings herein and not in connection with the receivership herein.

Mr. Zeamans, as surviving partner of Joseph & Zeamans, has presented a claim for services of such partners, as solicitors for a committee of holders of voting trust certificates. This committee was permitted to intervene in the receivership proceedings and the foreclosure actions heretofore brought. The solicitors assert their right to an allowance upon two grounds, to wit: (1) That such right has been heretofore adjudicated by this court; and (2) as result of the intervention of the stockholders' committee $8,435,000 was made available for payment to general creditors.

There is no question that these solicitors performed a large amount of legal services. If this court felt it were authorized to make an allowance, it would gladly exercise that authority. Extensive briefs by these solicitors and by the receivers and others in interest have been submitted on the question of the right of the court to make an allowance. The court has carefully considered these and reviewed the record of the proceedings in the receivership with which these applications are concerned.

The claim of the petitioner that their rights have been adjudicated cannot be sustained. The decree in the foreclosure action directed the payment of "expenses, allowances and disbursements of American Steamship Company * * * the payment of such allowances to solicitors, attorneys and counsel for other parties, and interveners * * * as this court by its further order * * * shall allow, determine and decree." There were three interveners. The specific question of the right of these petitioners to any allowance was not considered nor was any decree making any allowance to them ever made. Under such circumstances it cannot be said that this court has held that these petitioners were entitled to any allowance.

Facts with reference to the results obtained through petitioners' efforts are, as the court understands them, these: By permission of the court, actions in foreclosure were brought by the Guaranty Trust Company, as trustee for a first mortgage, and by the Chase National Bank of New York, as trustee under a mortgage and deed of trust, against Wickwire Spencer Steel Company. These were consolidated with the equity action in the receivership. A question is raised as regards whether the Guaranty Trust Company, as trustee, claimed that the lien of its mortgage covered the quick assets of the company. It appears that on the trial no claim was made to these. In any event, the receivers promptly appeared in the foreclosure action and denied such lien. The committee of holders of common stock voting trust certificates and class B noteholders intervened and answered making the same denial. Substantially a year after the receivers had answered, the committee for the holders of voting trust certificates of common stock intervened. By its answer any issue as to the lien upon the quick assets was met. Other issues were raised by this committee; that the mortgage itself was invalid because of fraud and that the Wickwire Spencer Steel Company was solvent. The issues were referred to a special master. He found that the mortgage did not cover the quick assets; that the mortgage was a valid mortgage; and, further, that the Wickwire Spencer Steel Company was insolvent. The report of the special master was confirmed over the opposition of the committee of the common stockholders, and this affirmance was confirmed on appeal to the Circuit Court of Appeals, 49 F.(2d) 766.

While, as stated, the special master found that the lien of the mortgage did not cover quick assets, it is obvious from a reading of the record, the report of the special master, and the opinion of Judge Hazel, that this question was not made an issue upon the trial. If it can be said that the common stockholders' committee in its answer controverted the claim that the lien of the mortgage covered quick assets, it is also obvious from the record that the committee for the common stockholders took the opposite position upon the trial in order to establish an element of fraud in the procuring of the mortgage.

Upon the law as applied to the facts in this suit, no allowance can be made to the petitioners for their services. The law is well settled by uniform decisions in many courts.

 Where a solicitor through action on behalf of all the members of a class of interested parties is successful in realizing a fund for distribution to members of that class, he is entitled to an allowance out of the funds so secured on the theory that those who accept the benefits of such services must also assume a share of the expenses connected therewith. Hobbs v. McLean, 117 U.S. 567, 6 S.Ct. 870, 29 L.Ed. 940; Trustees of Internal Improv. Fund v. Greenough, 105 U.S. 527, 26 L.Ed. 1157; Central R. Co. v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915; Carbon Steel Co. v. Slayback (C.C.A.) 31 F.(2d) 702. This rule is also applicable in bankruptcy. In re Medina Quarry Co. (C.C.A.) 191 F. 815. Counsel for stockholders in a successful action to conserve the assets of a corporation are entitled an allowance. Mecartney v. Guardian Trust Co. (C.C.A.) 280 F. 64; Colley v. Wolcott (C.C.A.) 187 F. 595. If the efforts are unsuccessful no allowance may be made, since no fund is created from which it may be paid. Davis v. Seneca Falls Mfg. Co. (C.C.A.) 17 F.(2d) 546; In re Marcuse & Co. (D.C.) 4 F.(2d) 814; Lamar v. Hall & Wimberly (C.C.A.) 129 F. 79; Phinizy v. Augusta & K. R. Co. (C.C.) 98 F. 776. To entitle such a party to an allowance, the fund created must be one in which the party is entitled to share. Brown v. Pennsylvania R. Co. (C.C.A.) 250 F. 513; Buell v. Kanawha Lumber Corporation (D.C.) 201 F. 762; Buford v. Tobacco Growers' Co-op. Ass'n (C.C.A.) 42 F.(2d) 791. But when it is shown that prior liens will absorb all of the money available and no money is made available to the members of the petitioner's class, no allowance may be made. Muskegon Boiler Works v. Tennessee Valley Iron & R. Co. (D.C.) 274 F. 836; Lamar v. Hall & Wimberly, supra. The same rule is followed in bankruptcy proceedings. In re Gillaspie (D.C.) 190 F. 88.

 Under the above-mentioned rules, the petitioners Joseph & Zeamans would not be entitled to an allowance. Assuming their action may have been successful in freeing a substantial portion of the assets of the company from the lien of the mortgage, such assets were not sufficient to pay off subsequent liens so as to leave any fund for the stockholders whom petitioners represented. Thus the action was no more

beneficial to stockholders than was that of the stockholders in Lamar v. Hall & Wimberly, supra, where, although the stockholders were successful in raising the bid on the property from $50,000 to $90,000, the sale price remained insufficient to pay the liens.

Petitioners cite F. & W. Grand 5–10 & 25 Cent Stores, Inc., Bankrupt; U. S. D. Court, S. D. of N. Y.; N. Y. Law Journal, July 2, 1934, as authority for granting their petition on the ground that their action was brought in good faith based upon an apparent interest in the assets of the estate. In that case an allowance was granted to counsel for a committee for preferred stockholders where his services had resulted beneficially to the estate. It does not appear that his services resulted in setting up a fund for the benefit of the preferred stockholders, but the court in making an allowance stated: "The appropriateness of his making the efforts which he made to this end must, I think, be judged as of the time when they were made and not solely in the light of the eventual method adopted of liquidating the estate after a supervening bankruptcy." This case has no application here for the reason that it cannot be said that the services of claimants resulted in any saving to the creditors or stockholders.

For the reason hereinbefore assigned, the claim for disbursements must be disallowed.

Certain allowances for services and expenses in the United States District Court for the District of Massachusetts and the United States District Court, Northern District of Illinois, Eastern Division, have been recommended by such courts. These recommendations as so made are hereby approved and are allowed in these several amounts:

### Illinois District

Chicago Title & Trust Company, receiver, $20,000; $12,500 of which amount has heretofore been paid, leaving a balance due of ................ $ 7,500.00

Isham, Lincoln & Beale, solicitors for the receivers, $10,000; $7500 of which amount has heretofore been paid, leaving a balance due of............ 2,500.00

P. J. Lucey, solicitor for plaintiff, $500; no part of which sum has been paid........... 500.00

The Northern Trust Company as executor under the last will and testament of Roswell B. Mason, deceased, and Joseph B. Crowley as solicitors for defendant, $500; no part of which sum has been paid.... 500.00

### Massachusetts District

Warner, Stackpole & Bradlee, solicitors for the receivers, $35,000; as compensation in full for all their legal services rendered in these proceedings in addition to $15,000 already received .................. $35,000.00

Theodore Hoague as solicitor for the defendant, $500 in full compensation for his services in these proceedings 500.00